COIT INDEPENDENCE JOINT VENTURE *v.* FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, AS RECEIVER OF FIRSTSOUTH, F. A.

No. 87–996.   Argued November 1, 1988—Decided March 21, 1989

562

O'CONNOR, J., delivered the opinion for a unanimous Court with respect to Parts I, II, and III, and the opinion of the Court with respect to Part IV, in which REHNQUIST, C. J., and BRENNAN, WHITE, MARSHALL, STEVENS, and KENNEDY, JJ., joined. BLACKMUN, J., *post*, p. 588, and SCALIA, J., *post*, p. 588, filed opinions concurring in part and concurring in the judgment.

*Robert E. Goodfriend* argued the cause for petitioner. With him on the briefs was *Paul E. Galvin.*

*Jeffrey P. Minear* argued the cause for respondent. With him on the brief were *Solicitor General Fried* and *Deputy Solicitor General Cohen.**

JUSTICE O'CONNOR delivered the opinion of the Court.

This case presents the question whether Congress granted the Federal Savings and Loan Insurance Corporation (FSLIC), as receiver, the exclusive authority to adjudicate the state law claims asserted against a failed savings and loan association. We hold that Congress did not grant FSLIC such power and that the creditors of a failed savings and loan association are entitled to *de novo* consideration of their claims in court. We also hold that creditors are not required to exhaust FSLIC's current administrative claims procedure before filing suit because the lack of a clear time limit on FSLIC's consideration of claims renders the administrative procedure inadequate.

---

*Briefs of *amici curiae* urging reversal were filed for the United States League of Savings Institutions by *Arthur W. Leibold, Jr., Bruce A. Cohen, Alan Rosenblat,* and *Thomas A. Pfeiler;* for Joseph M. Hudspeth by *Wylene W. Dunbar;* and for George S. Watson et al. by *Irwin Goldbloom, Maureen E. Mahoney,* and *C. Westbrook Murphy.*

*Kenneth S. Geller* and *Kathryn A. Oberly* filed a brief for the Federal Home Loan Bank of Dallas et al. as *amici curiae* urging affirmance.

*Kathleen E. Topelius* and *Wendy B. Samuel* filed a brief for the National Council of Savings Institutions as *amicus curiae.*

## I

From 1983 to 1986, Coit Independence Joint Venture (Coit), a real estate concern, borrowed money from FirstSouth, F. A., a federal savings and loan association. Subsequent disagreements led Coit to file suit against FirstSouth in October 1986 in the 95th Judicial District Court of Dallas County, Texas. In its state court complaint, Coit alleged that it had received two loans of $20 million and $30 million to purchase two parcels of undeveloped land. Coit alleged that FirstSouth had required it to pay a "profit participation" interest in any profits derived from sale of the property as a condition of receiving the loans. Coit asserted that this "profit participation" fee was interest that, when added to the regular accrued interest rate, made the loans usurious under Texas law. Complaint ¶¶ 4–13, App. 17–22. Coit also alleged that FirstSouth orally agreed to allow Coit to draw down funds to improve the property purchased with the $30 million loan, and to carry the loan, by executing any necessary renewal notes, for at least five years unless the property was sold earlier. Coit charged that FirstSouth violated this agreement in August 1986 by refusing to renew the notes and threatening to foreclose on the property.

Coit sought damages from FirstSouth for usury. Alternatively, Coit sought a declaratory judgment that FirstSouth was Coit's partner by virtue of its profit sharing interest in the joint venture and that FirstSouth had breached its fiduciary duty and its implied duty of good faith and fair dealing. Complaint ¶¶ 11–16, App. 21–23. Coit also sought a declaration that any outstanding note was unenforceable.

On December 4, 1986, two months after Coit filed suit in state court, the Federal Home Loan Bank Board (Bank Board) determined that FirstSouth was insolvent and appointed FSLIC as receiver. Substituting itself for FirstSouth in Coit's state suit, FSLIC removed the case to federal court. In February 1987, the District Court dismissed the suit for lack of subject matter jurisdiction, relying on *North*

*Mississippi Savings & Loan Assn.* v. *Hudspeth*, 756 F. 2d 1096 (CA5 1985), cert. denied, 474 U. S. 1054 (1986).

In *Hudspeth*, the Court of Appeals for the Fifth Circuit held that FSLIC has exclusive jurisdiction to adjudicate claims against the assets of an insolvent savings and loan association placed in a FSLIC receivership, subject first to review by the Bank Board and then to judicial review under the Administrative Procedure Act. 756 F. 2d, at 1103. The *Hudspeth* court relied on two statutory provisions in reaching this conclusion. First, 12 U. S. C. § 1464(d)(6)(C) states that "[e]xcept as otherwise provided in this subsection, no court may . . . except at the instance of the Board, restrain or affect the exercise of powers or functions of a conservator or receiver." Second, 12 U. S. C. § 1729(d) provides that "[i]n connection with the liquidation of insured institutions, [FSLIC] shall have power . . . to settle, compromise, or release claims in favor of or against the insured institutions, and to do all other things that may be necessary in connection therewith, subject only to the regulation of the Federal Home Loan Bank Board." The *Hudspeth* court reasoned that Congress, by these provisions, intended that FSLIC should be able to act quickly in liquidating failed institutions and "not be interfered with by other judicial or regulatory authorities." 756 F. 2d, at 1101.

The Fifth Circuit rejected Hudspeth's argument that adjudication of claims against a debtor, as opposed to allocation of assets to satisfy those claims, is not a receivership function, and thus that judicial resolution of claims would not "restrain or affect" FSLIC's powers as receiver. The court reasoned that judicial "resolution of even the facial merits of claims . . . would delay the receivership function of distribution of assets" and that "such a delay is a 'restraint' within the scope of the statute." *Id.*, at 1102. The court found further support for its reading of the statute in the Board's regulations giving FSLIC the power to disallow claims not "proved to its satisfaction," 12 CFR §§ 549.4, 569a.8 (1988),

which the court took to mean the power to adjudicate claims. 756 F. 2d, at 1102, and n. 5.

Since *Hudspeth* was decided, FSLIC has successfully urged state and federal courts to dismiss a broad variety of claims for lack of subject matter jurisdiction. Those creditor claims have included contract and tort claims, see, *e. g.*, *Resna Associates, Ltd.* v. *Financial Equity Mortgage Corp.*, 673 F. Supp. 1371, 1372 (NJ 1987), alleged antitrust violations, *Red Fox Industries, Inc.* v. *FSLIC*, 832 F. 2d 340 (CA5 1987), and even racketeering claims, *Baer* v. *Abel*, 637 F. Supp. 343, 347 (WD Wash. 1986).

In the instant case, Coit appealed the District Court's dismissal of its case for lack of subject matter jurisdiction to the Fifth Circuit. That court acknowledged that since *Hudspeth* was decided two other courts had held that Congress did not intend FSLIC to enjoy exclusive jurisdiction over creditors' state law claims against savings and loan associations under FSLIC receivership. *Morrison-Knudsen Co.* v. *CHG International, Inc.*, 811 F. 2d 1209 (CA9 1987), cert. dism'd *sub nom. FSLIC* v. *Stevenson Assocs.*, 488 U. S. 935 (1988); *Glen Ridge I Condominiums, Ltd.* v. *FSLIC*, 734 S. W. 2d 374 (Tex. App. 1986), writ of error denied, 750 S. W. 2d 757 (Tex. 1988), cert. pending, No. 88–659. However, the Fifth Circuit held that it was bound by *Hudspeth* and affirmed the District Court's dismissal of Coit's suit. The court also concluded that Coit's constitutional challenges to exclusive FSLIC jurisdiction were not ripe for review. *Coit Independence Joint Venture* v. *FirstSouth, F. A.*, 829 F. 2d 563, 565 (1987).

On September 28, 1987, the deadline established by FSLIC for the filing of creditor claims against FirstSouth, Coit filed its proof of claim with FSLIC for approximately $113 million. Six months later, FSLIC notified Coit that its claim had been "retained for further review." There has been no further action on Coit's claim.

We granted certiorari to resolve the conflict in the lower courts over whether FSLIC has exclusive authority to adjudicate the validity of creditors' state law claims against failed savings and loan associations under a FSLIC receivership. 485 U. S. 933 (1988). We now reverse.

## II

Resolution of this case requires us to interpret statutory provisions governing FSLIC and the Bank Board that were enacted over a span of 50 years. Moreover, those provisions are embedded in a complex statutory framework. Prior to the Great Depression of the 1930's, savings and loan associations were chartered and regulated by the States alone. However, in the face of heavy withdrawals from savings accounts, mortgage loan defaults, and limited funds for home mortgages during the depression, Congress passed the Federal Home Loan Bank Act, 47 Stat. 725, now codified, as amended, 12 U. S. C. § 1421 *et seq.* That Act provided for the creation of up to 12 federal home loan banks throughout the country whose function was to loan money to savings and loan associations and to certain other mortgage lenders. 47 Stat. 726, 12 U. S. C. § 1423. The Act also created the Federal Home Loan Bank Board to oversee the 12 home loan banks and to raise funds for them by selling bonds. 47 Stat. 736, 12 U. S. C. § 1437. See T. Marvell, The Federal Home Loan Bank Board 20 (1969).

One year later, Congress enacted the Home Owners' Loan Act of 1933 (HOLA), which empowered the Bank Board to organize, regulate, and charter federal savings and loan associations. 48 Stat. 128, as amended, 12 U. S. C. § 1461 *et seq.* The HOLA also gave the Bank Board the power to prescribe rules and regulations for the "reorganization, consolidation, merger, or liquidation of such associations, including the power to appoint a conservator or a receiver to take charge of the affairs of any such association." HOLA, § 5(d), 48 Stat. 133, now codified, as amended, 12 U. S. C. § 1464(d)(11).

In 1934, Congress established FSLIC to insure the accounts of all federal savings and loan associations and certain state-chartered associations. National Housing Act (NHA), § 402(a), 48 Stat. 1256, as amended, 12 U. S. C. § 1725(a). If an insured institution was in default, FSLIC was required by the NHA to either pay depositors the insured amount of their account or to transfer the insured account to an insured institution not in default. NHA, § 405(b), 48 Stat. 1259, as amended, 12 U. S. C. § 1728(b). If a federal savings and loan association was in default, FSLIC was to be appointed conservator or receiver and was authorized "(1) to take over the assets of and operate such association, (2) to take such action as may be necessary to put it in sound and solvent condition, (3) to merge it with another insured institution, (4) to organize a new Federal savings and loan association to take over its assets, or (5) to proceed to liquidate its assets in an orderly manner, whichever shall appear to be to the best interests of the insured members of the association in default; and in any event [FSLIC] shall pay the insurance as provided in section 405 and all valid credit obligations of such association." NHA, § 406(b), 48 Stat. 1260, now codified, as amended, 12 U. S. C. § 1729(b)(1). FSLIC could also accept appointment as receiver of a state-chartered insured institution, assuming the same powers and duties as those with respect to a federal institution. NHA, § 406(c), 48 Stat. 1260, as amended, 12 U. S. C. § 1729(c)(1)(A). In the event that FSLIC liquidated a failed savings and loan, the NHA provided:

> "[FSLIC] shall have power to carry on the business of and to collect all obligations to the insured institutions, to settle, compromise, or release claims in favor of or against the insured institutions, and to do all other things that may be necessary in connection therewith, subject only to the regulation of the court or other public

authority having jurisdiction over the matter." NHA, § 406(d), 48 Stat. 1260, now codified, as amended, 12 U. S. C. § 1729(d).

In the Housing Act of 1954, Congress amended both the NHA and the HOLA. The Housing Act amended § 5(d) of the HOLA by setting forth specific grounds for the Bank Board's appointment of a conservator or receiver for a federal savings and loan association, such as insolvency, violation of law or regulation, concealment of books or records, and unsound operation. Housing Act of 1954, § 503, 68 Stat. 635–636, as amended, 12 U. S. C. § 1464(d)(6)(A). The Housing Act required formal administrative hearings, subject to judicial review under the Administrative Procedure Act, before a conservator or receiver could be appointed. § 503, 68 Stat. 636.

The first major amendments to the 1934 NHA were made in the Financial Institutions Supervisory Act of 1966 (FISA), Pub. L. 89–695, 80 Stat. 1028, 1036, now codified, as amended, 12 U. S. C. §§ 1464, 1730 (1982 and Supp. V). This Act gave the Bank Board a more flexible array of enforcement powers, short of placing thrifts in receivership or terminating their insurance, to prevent insured institutions from violating laws or regulations or engaging in unsafe and unsound practices. The FISA also gave the Bank Board authority, with respect to federal savings and loan associations, to appoint a conservator or receiver *ex parte* and without notice if certain grounds existed, including insolvency, substantial dissipation of assets due to violations of law or unsafe or unsound practices, willful violation of a cease-and-desist order, or concealment of books, papers, records, or assets. FISA, 80 Stat. 1032–1033, 12 U. S. C. § 1464(d)(6)(A).

If the Bank Board appointed a conservator or receiver, the savings and loan association could, within 30 days, bring an action in United States district court "for an order requiring the Board to remove such conservator or receiver." *Ibid.*

It is in this context that the following language, relied on by the Fifth Circuit in *Hudspeth*, first appeared:

"Except as otherwise provided in this subsection, no court may take any action for or toward the removal of any conservator or receiver, or, except at the instance of the Board, restrain or affect the exercise of powers or functions of a conservator or receiver." FISA, 80 Stat. 1033, 12 U. S. C. § 1464(d)(6)(C).

The FISA also added greater scope to the Bank Board's power to make rules and regulations, including rules and regulations governing the liquidation of failed savings and loan associations and the conduct of receiverships. FISA, 80 Stat. 1035, 12 U. S. C. § 1464(d)(11).

Subsequent statutes have extended the Bank Board's power to appoint FSLIC as receiver of insolvent state-chartered thrifts. See Bank Protection Act of 1968, Pub. L. 90–389, § 6, 82 Stat. 295–296, as amended, 12 U. S. C. §§ 1729(c)(2), 1729(c)(3); Garn-St Germain Depository Institutions Act of 1982, Pub. L. 97–320, § 122(d), 96 Stat. 1482, 12 U. S. C. § 1729(c)(1)(B); Competitive Equality Banking Act of 1987, Pub. L. 100–86, § 509(a), 101 Stat. 635, note following 12 U. S. C. § 1464 (1982 ed., Supp. V).

Once FSLIC is appointed receiver of an insolvent savings and loan association, FSLIC steps into the shoes of the association and takes control of its assets. If FSLIC liquidates the association, it must promptly reimburse insured depositors out of its insurance fund. 12 U. S. C. § 1728(b). If FSLIC is not satisfied regarding the validity of a depositor's claim, "it may require the final determination of a court of competent jurisdiction before paying such claim." *Ibid.* FSLIC then satisfies the claims of uninsured creditors to the extent that the association's assets permit it to do so. Because FSLIC is subrogated to the rights of the insured depositors whom it has reimbursed, FSLIC is normally the single largest claimant against the assets of a failed savings and

loan association and generally recoups a substantial portion of its insurance payouts from those assets. See *Morrison-Knudsen Co.*, 811 F. 2d, at 1215–1216; Note, 10 W. New Eng. L. Rev. 227, 229–230 (1988).

### III

Coit argues that *Hudspeth* incorrectly held that Congress granted FSLIC adjudicatory power over creditors' claims against failed savings and loan associations under FSLIC receivership, subject only to limited judicial review in the courts under the Administrative Procedure Act, 5 U. S. C. § 551 *et seq.* Although FSLIC argued below, invoking *Hudspeth*, that the District Court lacked subject matter jurisdiction over Coit's claims, the Solicitor General does not endorse that position. See Brief for Respondent 16, 17, 20, and n. 13, 39–40. Respondent concedes both that "the power conferred by HOLA and the NHA should not be characterized as a power of 'adjudication,'" *id.*, at 17, and that the District Court had subject matter jurisdiction over Coit's claim.[1] *Id.*, at 16–17, 39. Respondent also acknowledged at oral argument that a creditor suing in court is entitled to a "de novo determination" of its claim. Tr. of Oral Arg. 36. We agree. The statutes governing FSLIC and the Bank Board do not grant FSLIC adjudicatory power over creditors' claims against insolvent savings and loan associations under FSLIC receivership, nor do they divest the courts of jurisdiction to consider those claims *de novo*.

### A

Congress granted FSLIC various powers in its capacity as receiver, but they do not include the power to adjudicate creditors' claims. Section 406 of the NHA conferred upon

---

[1] Respondent recognized at oral argument that FSLIC and the Bank Board do not necessarily agree with the Solicitor General on "every point" and may still be arguing cases in the lower courts on the jurisdictional theory. Tr. of Oral Arg. 56.

FSLIC the traditional powers of a receiver "to settle, compromise, or release claims in favor of or against the insured institutio[n]," 12 U. S. C. § 1729(d), and to "pay all valid credit obligations of the association," § 1729(b)(1)(B). Those essential functions of FSLIC as receiver have not changed since the enactment of the NHA in 1934. The plain language of §§ 1729(b) and 1729(d) cannot be read to confer upon FSLIC the power to *adjudicate* disputes with the force of law. The power to "settle, compromise, or release" claims both is distinguishable from the power to adjudicate and is to some extent inconsistent with it. As the Ninth Circuit reasoned in *Morrison-Knudsen Co.*, 811 F. 2d, at 1219:

> "Settlement and compromise strongly suggest the presence of the power of the other party to take the dispute to court. Settlement and compromise are to avoid that result. A body with the power to say 'yes' or 'no' with the force of law has much less need to settle or to compromise."

Similarly, the directive that FSLIC as receiver "shall pay all valid credit obligations of the association" cannot be read to confer upon FSLIC the power to adjudicate claims against an insolvent savings and loan association subject only to review under the Administrative Procedure Act. This provision simply empowers FSLIC, much like an ordinary insurance company, to pay those claims proved to its satisfaction. It does not give FSLIC the power to adjudicate claims with the force of law; nor does it preclude claimants from resorting to the courts for a determination of the validity of their claims.

Moreover, §§ 1729(b) and 1729(d) do not exist in isolation, but are embedded within a complex statutory framework. *Stafford* v. *Briggs*, 444 U. S. 527, 535 (1980) ("'[I]t is well settled that, in interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute'") (quoting *Brown* v. *Duchesne*, 19 How. 183, 194 (1857)). The

statutory framework in which § 1729 appears indicates clearly that when Congress meant to confer adjudicatory authority on FSLIC it did so explicitly and set forth the relevant procedures in considerable detail. For example, in its role as supervisor of ongoing thrift institutions, FSLIC together with the Bank Board is empowered to adjudicate violations of federal law, to issue cease-and-desist orders, to remove officers and directors, and to impose civil sanctions. See 12 U. S. C. §§ 1464(d), 1730. The statutory provisions that confer this authority set forth with precision the agency procedures to be followed and the remedies available, with explicit reference to judicial review under the Administrative Procedure Act. See 12 U. S. C. §§ 1464(d)(7)(A), 1730(j)(2). It is thus reasonable to infer that if Congress intended to confer adjudicatory authority upon FSLIC in its receivership capacity, it would have enacted similar provisions governing procedural and substantive rights and providing for judicial review.

## B

The *Hudspeth* decision rested primarily on 12 U. S. C. § 1464(d)(6)(C). That provision, introduced in 1966 as § 101 of the FISA, 80 Stat. 1033, states that "[e]xcept as otherwise provided in this subsection, no court may take any action for or toward the removal of any conservator or receiver, or, except at the instance of the Board, *restrain or affect* the exercise of powers or functions of a conservator or receiver." (Emphasis added.) The *Hudspeth* court reasoned that judicial "resolution of even the facial merits of claims . . . would delay the receivership function of distribution of assets" and that "such a delay is a 'restraint' within the scope of the statute." 756 F. 2d, at 1102. We disagree.

First, this language does not add adjudication of creditor claims to FSLIC's receivership powers. It simply prohibits courts from restraining or affecting FSLIC's exercise of those receivership "powers and functions" that have been granted by other statutory sources. As discussed above,

none of the statutes governing FSLIC and the Bank Board confer upon FSLIC the power to adjudicate claims against an insolvent savings and loan over which FSLIC has been appointed receiver.

Second, when the statutory context in which the provision appears is examined, it is clear that it does not have the meaning that *Hudspeth* attributed to it. Section 1464(d)(6)(A) sets forth the specific grounds for appointment of a receiver by the Bank Board and expressly authorizes associations placed in receivership to bring suit within 30 days in United States district court to challenge the receiver's appointment. Following the provision for a court challenge to remove the receiver comes the statutory language prohibiting courts, "[e]xcept as otherwise provided in this subsection," from taking any action to remove the receiver or to "restrain or affect" the exercise of the receiver's "powers or functions." When read in its statutory context, this provision prohibits untimely challenges to the receiver's appointment or collateral attacks attempting to restrain the receiver from carrying out its basic functions. It does not divest state and federal courts of subject matter jurisdiction to determine the validity of claims against institutions under a FSLIC receivership. See Note, 10 W. New Eng. L. Rev., at 257–260; Baxter, Life in the Administrative Track: Administrative Adjudication of Claims Against Savings Institution Receiverships, 1988 Duke L. J. 422, 484–485.

That the "restrain or affect" language should not be read to preclude *de novo* court adjudication of the validity of creditors' claims against savings and loans in receivership is reinforced by the fact that at the time of the statute's enactment it was well established at common law that suits establishing the existence or amount of a claim against an insolvent debtor did not interfere with or restrain the receiver's possession of the insolvent's assets or its exclusive control over the distribution of assets to satisfy claims. *Morris* v. *Jones*, 329 U. S.

545, 549 (1947); *Riehle* v. *Margolies*, 279 U. S. 218, 224 (1929). As this Court discussed in *Morris:*

> "No one can obtain part of the assets or enforce a right to specific property in the possession of the liquidation court except upon application to it. But proof and allowance of claims are matters distinct from distribution. . . . 'The latter function, which is spoken of as the liquidation of a claim, is strictly a proceeding *in personam.*' The establishment of the existence and amount of a claim against the debtor in no way disturbs the possession of the liquidation court, in no way affects title to the property, and does not necessarily involve a determination of what priority the claim should have." 329 U. S., at 549 (citations omitted).

Moreover, suits to establish the validity and amount of a claim against an insolvent national bank under a statutory receivership were not seen as interfering with the powers or functions of the receiver. See *Bank of Bethel* v. *Pahquioque Bank*, 14 Wall. 383, 401–402 (1872).

Looking to the practical effects of court adjudication on the receivership process, the *Hudspeth* court erroneously assumed that such adjudication would "restrain" FSLIC's exercise of its receivership powers by delaying its prompt liquidation of failed savings and loans. As this Court held in *Riehle* v. *Margolies,* a receiver's distribution of assets need not be postponed pending the resolution of disputed claims in other courts: "The power to fix the time for distribution may include the power . . . to decline to postpone distribution awaiting disposition of litigation in another court over a contested claim." 279 U. S., at 224. See also 3 R. Clark, Law and Practice of Receivers § 649(c) (3d ed. 1959). Indeed, the Bank Board's own regulations provide for interim distributions. See 12 CFR § 549.4(d) (1988) (allowing creditor claims to be paid by the receiver "from time to time, to the extent funds are available, in such manner and amounts as the Board may direct").

Finally, even if court adjudication of creditor claims delayed the distribution of assets and thereby constituted a "restraint" on FSLIC's receivership functions, *Hudspeth* provides no explanation for why the delay resulting from judicial review of FSLIC's administrative claims procedure would constitute any less of a "restraint." In sum, judicial resolution of Coit's state law claims against FSLIC as receiver for FirstSouth simply would not "restrain or affect" FSLIC's exercise of its receivership functions within the meaning of § 1464(d)(6)(C).

## C

Several provisions of the NHA indicate that Congress clearly envisaged that the courts would have jurisdiction over suits by creditors against FSLIC as receiver. When it established FSLIC in 1934, Congress provided that FSLIC could "sue and be sued, complain and defend, in any court of law or equity, State or Federal." NHA, § 402(c)(4), 48 Stat. 1256, now codified, as amended, 12 U. S. C. § 1725(c)(4). Moreover, in the Housing Act of 1954, Congress amended the NHA to establish a statute of limitations for actions against FSLIC to enforce deposit insurance claims, which were the most common type of claim in any thrift liquidation at the time. Housing Act of 1954, § 501(2), 68 Stat. 633, 12 U. S. C. § 1728(c). Most significantly, in 1966, in the very statute that contained the "restrain or affect" language of 12 U. S. C. § 1464(d)(6)(C), Congress provided an explicit grant of subject matter jurisdiction to the courts that clearly envisaged suits by creditors against FSLIC as receiver:

"Notwithstanding any other provision of law, . . . (B) any civil action, suit, or proceeding to which [FSLIC] shall be a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction thereof, without regard to the amount in controversy; and (C) [FSLIC] may, without bond or security, remove any such action,

suit, or proceeding from a State court to the United States district court . . . : *Provided*, That any action, suit, or proceeding to which [FSLIC] is a party in its capacity as conservator, *receiver*, or other legal custodian of an insured State-chartered institution and which involves only the rights or obligations of investors, *creditors*, stockholders, and such institution under State law shall not be deemed to arise under the laws of the United States." FISA, 80 Stat. 1042, 12 U. S. C. § 1730(k)(1) (emphasis added).

The proviso clause sets out the types of suits Congress expected FSLIC to defend against in state courts, including suits by creditors against FSLIC as receiver for state-chartered savings and loan associations. Moreover, there is no indication that Congress intended to treat state-chartered and federally chartered associations differently in this respect. See, *e. g.*, 12 U. S. C. § 1729(c)(1)(A) (granting FSLIC the "same powers and duties" as receiver for defaulted state institutions as it has with respect to federal savings and loan associations). In sum, we conclude that Congress clearly envisaged that the courts would have subject matter jurisdiction over creditor suits against FSLIC.

Because we conclude that FSLIC has not been granted adjudicatory authority by Congress and that Coit is entitled to *de novo* consideration of its state law claims in court, we need not reach Coit's claim that adjudication by FSLIC subject only to judicial review under the Administrative Procedure Act would violate Article III of the Constitution under *Northern Pipeline Construction Co.* v. *Marathon Pipe Line Co.*, 458 U. S. 50 (1982). Similarly, we need not reach Coit's due process and Seventh Amendment challenges to adjudication by FSLIC of its state law claims. We note, however, that the usury and breach of fiduciary duty claims raised by Coit, like the contract disputes in *Morrison-Knudsen Co.*, 811 F. 2d, at 1221, involve "private rights" which are at the

"core" of "matters normally reserved to Article III courts." *Commodity Futures Trading Comm'n* v. *Schor*, 478 U. S. 833, 853 (1986); *Northern Pipeline, supra*, at 69–72. The court below adopted an interpretation of the statutes governing FSLIC and the Bank Board that raises serious constitutional difficulties. In our view, those statutes can and should be read to avoid these difficulties. *Schor, supra*, at 841; *Crowell* v. *Benson*, 285 U. S. 22, 62 (1932).

## IV

Although FSLIC argued below that the District Court lacked subject matter jurisdiction over Coit's state law claims, respondent now defends the Fifth Circuit's judgment on the narrower ground that "the Bank Board and FSLIC plainly do have power to require claimants first to present their claims to FSLIC, and exhaust the administrative process leading to allowance, settlement, or disallowance" before suing on the claims in court. Brief for Respondent 20, and n. 13. Coit does not challenge the Bank Board's authority to establish a *voluntary* claims procedure. Coit contends, however, that the statutory provisions relied on by FSLIC do not demonstrate a congressional intent to require exhaustion of administrative remedies by claimants before they can file suit in court. Reply Brief for Petitioner 3.

## A

Our past cases have recognized that exhaustion of administrative remedies is required where Congress imposes an exhaustion requirement by statute. *Weinberger* v. *Salfi*, 422 U. S. 749, 766 (1975); *Myers* v. *Bethlehem Shipbuilding Corp.*, 303 U. S. 41, 50–51 (1938). Where a statutory requirement of exhaustion is not explicit, "courts are guided by congressional intent in determining whether application of the doctrine would be consistent with the statutory scheme." *Patsy* v. *Florida Board of Regents*, 457 U. S. 496, 502, n. 4

(1982). Moreover, "a court should not defer the exercise of jurisdiction under a federal statute unless it is consistent with that intent." *Id.*, at 501–502.

Congress gave the Bank Board a broad statutory mandate to reorganize or liquidate an insolvent federal savings and loan, using FSLIC as receiver for that purpose. 12 U. S. C. § 1464(d)(6). As we have discussed above, Congress also expressly granted FSLIC as receiver the responsibility to "pay all valid credit obligations of the association," § 1729(b)(1)(B), to "liquidate its assets in an orderly manner," § 1729(b)(1)(A)(v), and to "settle, compromise, or release claims in favor of or against the insured institutions, and to do all other things that may be necessary in connection therewith," § 1729(d). Moreover, Congress gave the Bank Board the broad "power to make rules and regulations for the reorganization, consolidation, liquidation, and dissolution of associations, . . . and for the conduct of conservatorships and receiverships." § 1464(d)(11).

Over 45 years ago, the Bank Board concluded that an administrative claims procedure was necessary in order for FSLIC to carry out its statutory responsibility to pay valid claims and to settle or disallow claims while liquidating the assets of a failed savings and loan association in an orderly manner. Thus, in 1941, acting pursuant to its broad rule-making authority under § 5(d) of the HOLA, the Bank Board established a claims procedure that remained in effect, largely unaltered, until 1986, when FSLIC's post-*Hudspeth* interim procedures became operative. 6 Fed. Reg. 4413, 4415 (1941).

At the time of the *Hudspeth* decision, the Bank Board's regulations provided that once FSLIC became receiver it would publish a notice to the association's creditors to present their claims by a specified date. 12 CFR § 549.4(a) (1988). Claims filed after that date would be "disallowed, except as the Board may approve them for whole or part payment from the association's assets remaining undistributed

at the time of approval." *Ibid.* The regulations further provided that FSLIC "shall allow any claim seasonably received and proved to its satisfaction," § 549.4(b), and that FSLIC "may wholly or partly disallow any creditor claim . . . not so proved, and shall notify the claimant of the disallowance and the reason therefor," *ibid.* After the date for presenting claims to FSLIC had expired, the regulations required FSLIC to file with the Bank Board "a complete list of claims presented, indicating the character of each claim and whether allowed by the receiver." § 549.4(c). Creditor claims allowed by FSLIC or approved by the Bank Board would then be "paid by the receiver, from time to time, to the extent funds are available, in such manner and amounts as the Board may direct." § 549.5(d).

Following the *Hudspeth* decision, the Bank Board established a dramatically different and more elaborate set of "interim procedures" governing creditor claims. These interim procedures have been used by FSLIC since July 1, 1986. 53 Fed. Reg. 13105 (1988).[2] Under these procedures, FSLIC as receiver first notifies all potential claimants of their right to present a claim by a specified date, which is not less than 90 days from the date of the notice. *Id.*, at 43854 (to be codified at § 575.4). Properly filed claims are then assigned to an agent of FSLIC's Special Representative for an initial determination whether to allow or disallow the claim. *Id.*, at 43854–43855 (to be codified at §§ 575.9(d), 575.10). The Special Representative must notify each claimant within six months after receipt of a properly filed proof of claim (or six months after the end of the 90-day notice period, whichever is

---

[2] These procedures were in effect at the time Coit's suit was dismissed for lack of subject matter jurisdiction, and Coit filed its proof of claim pursuant to these procedures by the date specified by FSLIC for claims against the assets of FirstSouth. The interim procedures, with minor modifications, became final on October 31, 1988, 53 Fed. Reg. 43850 (to be codified at 12 CFR pts. 575, 576, 577), and the citations hereafter are to the final version.

later) whether the claim will be allowed in full or in part, disallowed, or retained for further review. *Id.*, at 43855 (to be codified at § 575.11). If the claim is retained by FSLIC for further review, there is no time limit set for its disposition.

In reviewing a claim, the agent may require the claimant to submit additional documentation, answer written questions, provide a sworn statement, and submit a memorandum addressing legal issues. *Ibid.* (to be codified at § 575.13). The Special Representative compiles a "Receiver's record" and ultimately prepares a "proposed determination of claim in the form of proposed findings of fact and conclusions of law." *Id.*, at 43856 (to be codified at § 575.13(l)). If the claimant does not object to a proposed finding of fact or conclusion of law in a request for reconsideration, those facts or conclusions will be "conclusively established against the Claimant." *Ibid.* (to be codified at § 575.13(o)(2)). After considering the Receiver's record, FSLIC then issues a decision on the claim in the form of findings of fact and conclusions of law. *Ibid.* (to be codified at § 575.13(o)(6)).

If a claim is ultimately disallowed by FSLIC in whole or in part, the Special Representative notifies the claimant of its right to Bank Board review of the determination. *Ibid.* (to be codified at §§ 575.13(n), 575.13(p)). Claimants then have 60 days to file a written request for Bank Board review. *Id.*, at 43857 (to be codified at § 576.3(a)). The Bank Board conducts a preliminary review to determine if more information is needed, which will be completed in most cases within 60 days. *Id.*, at 43858 (to be codified at § 576.4(b)). Generally the Bank Board will issue a decision within six months from the date the record is closed. *Ibid.* (to be codified at § 576.7). Thus, even assuming that FSLIC itself rules within 180 days, the entire process for a claimant whose claim is not allowed in full could take well over a year from the time the claim is first filed with FSLIC until the Bank Board completes its final review. Because the regulations put no time limit on FSLIC's

consideration of claims retained for "further review," the length of time could be far longer and even indefinite.

Under these procedures, the Bank Board may make its own findings of fact and conclusions of law based upon the Administrative Record. *Ibid.* (to be codified at § 576.5(e)). The procedures further provide that "[j]udicial review of the disallowance in whole or in part of a claim against the assets of the FSLIC as receiver is available only after exhaustion of these procedures and review and final agency action by the Board." *Id.*, at 43852 (to be codified at § 575.1(a)).

## B

Respondent argues that just as the Bank Board has the authority under § 5(d)(11) of HOLA to establish an administrative claims procedure, it also has the authority to require claimants to exhaust that procedure before going to court. Respondent contends that FSLIC will be unable to fulfill its statutory responsibility to liquidate failed savings and loan associations "in an orderly manner" or to make rational judgments about which claims to pay, settle, or contest, unless it has an initial opportunity to consider the entire array of claims against an insolvent estate in a centralized claims process before claimants proceed to court. Brief for Respondent 25–30.

Although the language of the statutes governing FSLIC and the Bank Board does not explicitly mandate exhaustion of administrative remedies as a precondition for filing suit, the NHA does require that FSLIC liquidate the assets of a failed savings and loan "in an orderly manner," 12 U. S. C. § 1729(b)(1)(A)(v), "pay all valid credit obligations," § 1729(b)(1)(B), and "settle, compromise, or release claims in favor of or against the insured institutio[n], and to do all other things that may be necessary in connection therewith," § 1729(d). Moreover, there can be no doubt that the Bank Board's broad authority under § 5(d)(11) of the HOLA to establish rules for the conduct of receiverships empowers

the Board to respond to changing circumstances and present needs, within statutory constraints. § 1464(d)(11). In the present savings and loan crisis, with hundreds of savings and loan associations in receivership,[3] and with creditors of far greater number and variety than the small depositors who once were a failed thrift's main creditors, the Bank Board could reasonably conclude that FSLIC could not possibly fulfill its statutory responsibility to liquidate "in an orderly manner" unless FSLIC had notice of all claims against an insolvent savings and loan association and an initial opportunity to consider them in a centralized claims process.

If the Bank Board's regulations only required claimants to give FSLIC notice of their claims and then to wait for a reasonable period of time before filing suit while FSLIC decided whether to pay, settle, or disallow the claim, we have no doubt that such regulations would be a reasonable exercise of the Bank Board's broad rulemaking power under § 5(d)(11) of the HOLA and would be entirely consistent with Congress' clear intent that FSLIC liquidate failed savings and loan associations "in an orderly manner." The traditional reasons for judicial application of the exhaustion doctrine, even "in cases where the statutory requirement of exclusivity is not so explicit," *McKart* v. *United States*, 395 U. S. 185, 193 (1969), support the conclusion that the Bank Board could require that FSLIC be given notice of creditors' claims and a reasonable period of time to decide, in the first instance, whether to pay, settle, or contest those claims in court. The Bank Board reasonably could decide that FSLIC simply cannot perform its statutory function as receiver and liquidator of failed savings and loan associations unless it is notified of the entire array of claims against the assets of a failed association and has a reasonable period of time to make rational and consistent judgments regarding which claims to allow or contest, based on its expertise and knowledge of the total situation.

---

[3] See Note, 10 W. New Eng. L. Rev. 227, 228, n. 2 (1988).

Only then could FSLIC liquidate the association's assets "in an orderly manner," and settle many claims without resort to costly litigation—the expense of which is ultimately borne by the common pool of assets out of which all valid claims are paid.

In cases where suit has already been filed against a savings and loan association before FSLIC is appointed receiver, FSLIC will receive notice of those claims when it steps into the shoes of the failed savings and loan and takes control of its assets. Trial courts can then determine, in their discretion, whether to stay the proceedings for a limited time, based on such factors as the stage of the litigation and FSLIC's need to assess the possibility of settling the claims. See *Landis* v. *North American Co.*, 299 U. S. 248, 254–255 (1936); *Leyva* v. *Certified Grocers of California, Ltd.*, 593 F. 2d 857, 863–864 (CA9 1979); *Marshall* v. *Hartford Fire Ins. Co.*, 78 F. R. D. 97, 107 (Conn. 1978).

In our view, it is incorrect to characterize our exhaustion analysis in this Part as a ruling that the enabling legislation of FSLIC and the Bank Board "pre-empts" state law. See *post*, at 588–589 (SCALIA, J., concurring in part and concurring in judgment). Our discussion in Part IV does not purport to be predicated on any finding that federal law occupies the field to the exclusion of a substantive body of state law or regulations, or that the enforcement of state law would conflict with federal substantive policies. Indeed, we hold explicitly in Part III that Coit is entitled to *de novo* consideration of its state law claims in court, and that FSLIC has no statutory authority to divest the courts of subject matter jurisdiction over those claims. See *supra*, at 578–579. Moreover, the minimal delay entailed in a notice and reasonable time requirement is unlikely to "extinguish" state causes of action in the usual case. On the facts before us today, we need not address a case such as that posited by JUSTICE SCALIA, in which a state statute of limitations may expire during a reasonable waiting period established by FSLIC.

## C

The Bank Board's present regulations, however, exceed its statutory authority in two respects. First, the regulations purport to confer adjudicatory authority on FSLIC and on the Bank Board to make binding findings of fact and conclusions of law, subject only to "judicial review" presumably under the Administrative Procedure Act as opposed to *de novo* judicial determination. See, *e. g.*, 53 Fed. Reg. 43852, 43856, 43858 (1988) (to be codified at 12 CFR §§ 575.1, 575.13(o)(6), 576.5(e)). FSLIC does not have such authority for the reasons discussed above in Part III.

Second, the regulations do not place a clear and reasonable time limit on FSLIC's consideration of whether to pay, settle, or disallow claims. Under the current regulations, FSLIC must allow, disallow, or retain a claim "for further review" within six months after the filing of the claim or after the end of the 90-day notice period, 53 Fed. Reg. 43855 (1988), but no time limit is established for FSLIC's consideration of those claims retained for further review. Thus, as Coit so aptly puts it: "These procedures give FSLIC virtually unlimited discretion to bury large claims like Coit's in the administrative process, and to stay judicial proceedings for an unconscionably long period of time given FSLIC's purportedly limited objectives of centralizing the claims process and deciding whether claims should be paid or not." Reply Brief for Petitioner 18.

Indeed, Coit first filed its claim for approximately $113 million with FSLIC on September 28, 1987. Six months later, on March 18, 1988, Coit was notified that its claim was being retained for "further review." As of the date of oral argument, Coit's claim had been pending before FSLIC for over 13 months, and FSLIC had yet to make its initial determination. Since the Bank Board itself can take six months to dispose of any appeal, Coit's claim has essentially been relegated to a "black hole" from which it may not emerge before the statute of limitations on Coit's state law claims has run.

Administrative remedies that are inadequate need not be exhausted. *Greene* v. *United States*, 376 U. S. 149, 163 (1964); *Smith* v. *Illinois Bell Telephone Co.*, 270 U. S. 587, 591–592 (1926) ("[P]ublic service company is not required indefinitely to await a decision of the rate-making tribunal before applying to a federal court for equitable relief"). The lack of a reasonable time limit in the current administrative claims procedure renders it inadequate for several reasons. First, it allows FSLIC to delay the administrative processing of claims indefinitely, denying a litigant its day in court, while the statute of limitations runs. Second, it may enable FSLIC to coerce claimants to enter into unfair settlements by virtue of the fact that the receiver's assets may be depleted by interim distributions to other claimants by the time a claimant finally has access to the courts. These concerns are only exacerbated by the fact that FSLIC itself is often the main creditor against the assets of a failed savings and loan association, and thus may well have an incentive to delay decision on large claims against an insolvent's assets such as the claim filed by Coit.

Because the Bank Board's regulations do not place a reasonable time limit on FSLIC's consideration of claims, Coit cannot be required to exhaust those procedures. Coit is thus entitled to proceed directly to court for a *de novo* determination on the merits of its state law claims.

In sum, we conclude that Congress has not granted FSLIC the power to adjudicate creditors' claims against the assets of a failed savings and loan association under FSLIC receivership, and that creditors are entitled to *de novo* consideration of their claims in court. Moreover, creditors are not required to exhaust the current administrative claims procedure established by the Bank Board because it places no reasonable time limit on FSLIC's consideration of creditor claims. Accordingly, the judgment below is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE BLACKMUN, concurring in part and concurring in the judgment.

I join Parts I, II, and III of the Court's opinion. I refrain from joining Part IV and thus concur only in the judgment. My concern with Part IV is that it seems to me to amount to only an advisory opinion on what the Bank Board may do, based on a surmise of what the Bank Board might someday conclude it *must* do in order to liquidate "in an orderly manner."

JUSTICE SCALIA, concurring in part and concurring in the judgment.

I agree with the judgment of the Court, and join Parts I through III of its opinion. I do not join Part IV, however, because there is no precedent and in my view no sound policy justification for (1) using the doctrine of exhaustion of administrative remedies as a basis for pre-empting state law, and (2) imposing upon the Bank Board the obligation to set forth by rule a specific time period within which FSLIC must act upon claims.

## I

This case is not about exhaustion; it is about pre-emption. To my knowledge, the doctrine of exhaustion of administrative remedies has never been used, as it is in today's opinion, as a means of pre-empting state law. We normally apply the doctrine by refusing to entertain a federal claim unless and until the plaintiff has resorted to the federally created administrative remedies for the grievance underlying that claim. See, *e. g.*, *Renegotiation Board* v. *Bannercraft Clothing Co.*, 415 U. S. 1, 20–26 (1974); *McGee* v. *United States*, 402 U. S. 479, 483–486 (1971). That is a fair assessment of the congressional intent in creating the administrative remedies.

In the present case, by contrast, the Court applies what purports to be the exhaustion doctrine, not to determine when Congress wished federal claims to be first assertible, but to determine when Congress wished to prohibit the as-

sertion of *state* claims. The claims at issue in this case—and, I expect, in most litigation involving insolvent thrifts—arise under state law; and the suit was originally brought, before removal, in a Texas court. Part IV of the Court's opinion says that the Bank Board can exclude these Texas-law claims from federal court until they have first been acted upon by FSLIC, or until a specific time limit for such action has passed. Moreover, unless that statement is devoid of practical effect (requiring no more than the remand of removed cases to the state courts), presumably the Court means that the Board can exclude these "unexhausted" claims from state courts as well.

What is enough to suggest a congressional intent to defer the maturing of a federal cause of action is not enough to suggest a congressional intent to override state law. We have repeatedly said that federal law pre-empts state law in traditional fields of state regulation only when "that was the clear and manifest purpose of Congress," *Rice* v. *Santa Fe Elevator Corp.*, 331 U. S. 218, 230 (1947); see also *Puerto Rico Dept. of Consumer Affairs* v. *Isla Petroleum Corp.*, 485 U. S. 495, 500 (1988); *Hillsborough County* v. *Automated Medical Laboratories, Inc.*, 471 U. S. 707, 715 (1985); *Jones* v. *Rath Packing Co.*, 430 U. S. 519, 525 (1977). These assurances are meaningless if the directions to FSLIC to "pay all valid credit obligations," 12 U. S. C. § 1729(b)(1)(B), to "liquidate . . . assets in an orderly manner," 12 U. S. C. § 1729(b)(1)(A)(v), and to "settle, compromise, or release claims . . . and to do all other things that may be necessary in connection therewith," 12 U. S. C. § 1729(d), can be interpreted as a congressional authorization for the suspension of rights arising under state usury and contract law, and for the exclusion of state-court jurisdiction.

## II

It is, however, an understatement to say that what is involved is merely a "suspension" of state-created rights. The

suspension becomes an extinguishment if, during the period while the plaintiff is pursuing his required "exhaustion" of federal remedies for his state claim, the state statute of limitations expires. To meet this difficulty, and thereby to make its pre-emption of state law seem less drastic, the Court imposes upon the Bank Board the requirement that its regulations "place a clear and reasonable time limit on FSLIC's consideration of whether to pay, settle, or disallow claims." *Ante,* at 586. Of course even this does not completely solve the problem. Even if the Bank Board establishes a flat 90-day limit, those state-created claims whose statute of limitations happens to expire during that 90-day period will be extinguished. The only complete solution would be to require tolling of the state statutes of limitations during this 90-day period—but that is so much more obviously a pre-emption of state law, and so difficult to conceal under the guise of "exhaustion," that the Court avoids it, leaving state claimants without remedy if their causes of action expire before federal "exhaustion" has occurred.

But to achieve this limited benefit, the Court creates yet another novel doctrine that we may have cause to regret. I know of no precedent for the proposition that an agency's regulations are "arbitrary, capricious" or "otherwise not in accordance with law," 5 U. S. C. § 706(2)(A), simply because they do not set forth a precise time by which the agency will have acted. To be sure, particular agency action *becomes* arbitrary and capricious when it is too long delayed, wherefore the Administrative Procedure Act instructs reviewing courts to "compel agency action unlawfully withheld *or unreasonably delayed,*" 5 U. S. C. § 706(1) (emphasis added). But that determination is made on a case-by-case basis. See, *e. g., Sierra Club* v. *Thomas,* 264 U. S. App. D. C. 203, 212–215, 828 F. 2d 783, 794–797 (1987); *Public Citizen Health Research Group* v. *Commissioner, Food and Drug Administration,* 238 U. S. App. D. C. 271, 285, 740 F. 2d 21, 35 (1984). The equivalent, in the present context, would be

to say that exhaustion has been completed when, in the particular case, FSLIC has taken too long to make up its mind. See, *e. g., id.*, at 282, 740 F. 2d, at 32; *Environmental Defense Fund, Inc.* v. *Hardin*, 138 U. S. App. D. C. 391, 397, 428 F. 2d 1093, 1099–1100 (1970). But to say that the Bank Board must establish, for all cases, a specified cut-off date is to impose, contrary to our case law, a requirement that appears neither in the Administrative Procedure Act nor in FSLIC's organic law. See *Vermont Yankee Nuclear Power Corp.* v. *Natural Resources Defense Council, Inc.*, 435 U. S. 519, 524 (1978). The only thing to be said for the invention is that it somewhat reduces the harm caused by invention of the "exhaustion" requirement. One distortion has led to another.

\*     \*     \*

It seems to me that, in Part IV of its opinion, the Court labors courageously—but in the last analysis unsuccessfully—to supply what is lacking in FSLIC's organic law to cover the extraordinary situation with which the agency is now confronted. Ordinarily, the filing of a lawsuit against an insolvent thrift would pose no major problem. Service of summons in the suit would itself constitute notice of the claim, and if FSLIC was interested in granting or settling the claim it could request the state or federal court to defer further proceedings for a reasonable time pending settlement negotiations. It is hard to imagine that any court would deny such a request. It is only the current enormous volume of claims against insolvent thrifts, in a diversity of courts, that makes it impracticable for FSLIC to proceed in this fashion. I do not think it our role to supply the emergency provisions Congress has not enacted—and we are not much good at it anyway, since I doubt that (even at the expense of making some bad law) we have succeeded in giving FSLIC meaningful relief. The agency's main problem, I suspect, is that the number of claims it must review is so high that it cannot give courts assurances that it will be able to address

settlement within a "reasonable time." Today's opinion does nothing to solve that. Congress is currently considering legislation directed towards the so-called "Savings and Loan crisis," Financial Institutions Reform, Recovery and Enforcement Act of 1989, S. 413, 101st Cong., 1st Sess. (1989), and instead of the dicta in Part IV of the opinion, we should have remanded FSLIC to that legislative process.

For these reasons, although I join in the reversal of the decision below, I do so on the more categorical ground that FSLIC's claim procedures cannot pre-empt the filing of suits under state law.