## E & E ENTERPRISES, etc. v RESOLUTION TRUST CORPORATION, etc.

Case No. 90-19502 (01)

Seventeenth Judicial Circuit, Broward County

May 17, 1991

### OPINION OF THE COURT

JACK MUSSELMAN, Circuit Judge.

### ORDER GRANTING MOTION TO ABATE AND STAYING ACTION FOR 90 DAYS

This Cause having come before the Court upon the Motion to Abate and Stay of RESOLUTION TRUST CORPORATION as Receiver of HOLLYWOOD FEDERAL BANK, and the Court having heard argument of counsel, having reviewed the Court file, and being otherwise advised in the premises, it is hereby

ORDERED AND ADJUDGED that said Motion be and the same is hereby GRANTED based upon the following.

Plaintiff, E & E ENTERPRISES, instituted this action against Defendant, HOLLYWOOD FEDERAL BANK, on June 29, 1990. On February 22, 1991, the Office of Thrift Supervision appointed RESOLUTION TRUST CORPORATION (hereinafter referred to as RTC) as Receiver of HOLLYWOOD FEDERAL BANK. On March 28, 1991, by Order of this Court, RTC was substituted as the real party in interest in this action for HOLLYWOOD FEDERAL BANK with respect to the claims, demands and causes of action filed. Defendant is a financial institution subject to the provisions of the Financial Institutions Reform, Recovery and Enforcement Act of 1989, 12 U.S.C. § 1821 (hereinafter referred to as FIRREA).

RTC bases its Motion to Abate in two parts. First, RTC relies on 12 U.S.C. § 1821(d)(12)(A) which provides:

> After the appointment of a conservator or receiver for an insured depository institution, the conservator or receiver may request a stay for a period not to exceed—
>
> (i) 45 days, in the case of any conservator; and
>
> (ii) 90 days, in the case of any receiver, in any judicial action or proceeding to which such institution is or becomes a party.

Secondly, RTC states that in order for Plaintiff to be able to assert a claim against RTC as Receiver, the plaintiff must first submit an administrative claim to the RTC. The RTC contends that FIRREA requires a 180-day stay period during which Plaintiff must first process its claim through RTC's administrative channels before resort to this Court may be had. For this proposition, RTC relies on 12 U.S.C. § 1821(d)(5)(A)(i) which provides:

> Before the end of the 180-day period beginning on the date any claim against a depository institution is filed with the Corporation as receiver, the Corporation shall determine whether to allow or disallow the claim and shall notify the claimant of any determination with respect to such claim.

Initially, this Court will address the defendant's plea for the imposition of a 90-day stay. Pursuant to 12 U.S.C. § 1821(d)(12)(A), this Court finds that it is clear that Title twelve of the United States Code provides that when a receiver is appointed for an insured depository institution, the receiver may request a 90-day stay of any judicial action or proceeding to which such institution is or becomes a party. Moreover, 12 U.S.C. § 1821(d)(12)(B) provides that upon a request by the receiver, the court shall grant a stay as to all parties.

The legislative history of FIRREA indicates that the stay provision

was enacted to enable the receiver to orient itself to the litigation. *See, Tuxedo Beach Club Corp. v City Federal Savings Bank,* 729 F. Supp 1508, 1509 (D.N.J. 1990) (citations omitted) (hereinafter *Tuxedo I).* In *FDIC v Taylor,* 727 F. Supp. 326, 328 (S.D. Tex. 1989), the court also relied on the legislative history, interpreting the provision to denote a breathing period upon the receiver's appointment.

Accordingly, based on the mandatory statutory language and the above cited cases interpreting the legislative history, RTC's request for a 90-day stay is GRANTED.

The Court now turns to RTC's second request, the application of a 180-day stay for the exercise of an administrative claims procedure. Although counsel for RTC suggests otherwise, this Court initially notes the absence of a proviso in FIRREA mandating the processing of claims with the RTC when a lawsuit has been filed prior to the appointment of a receiver or conservator.

Looking to the language of the statute itself, 12 U.S.C. § 1821(d)(12) is entitled "suspension of legal actions." Subsection twelve then goes on to provide that in the event of ongoing litigation in which an insured depository institution is involved, if a receiver is appointed, they become the party in interest and are entitled to a ninety day stay of such action or proceeding. Yet, defendant, RTC, is urging that the Court also impose a 180-day stay, in accordance with section 1821(d) (5)(A)(i) of Title twelve. However, upon reviewing the text of that section—"[when] any claim against a depository institution is filed with the Corporation as receiver"—, it appears that the administrative claims procedure is to be utilized when the claim is first being filed after the Corporation is installed as receiver. Moreover, as recognized by the District Court of New Jersey, "if a 180-day stay were required, the 90-day stay provision would be superfluous." *Tuxedo Beach Club Corp. v City Federal Savings Bank,* 737 F. Supp. 18, 19 (D.N.J. 1990) (hereinafter referred to as *Tuxedo II).*

In *Tuxedo II,* the plaintiffs initiated their breach of contract action against City Federal on December 5, 1989. Two days later, December 7, 1989, the Office of Thrift Supervision appointed the RTC as Receiver for the defendant. After being denied a 90-day stay (see *Tuxedo I),* the RTC then moved for a 180-day stay pursuant to 12 U.S.C. §§ 1821(d)(5)(6)(7). In trying to reconcile the two stay provisions, the court found that they provided for contradictory outcomes and turned to the legislative history for enlightenment. After analyzing the House Reports, the court concluded that Congress intended to require even those plaintiffs who had previous pending actions to first

**165**

have their claims processed administratively through the RTC, *Tuxedo II*, 737 F. Supp. at 20. However, noting that since the receiver was appointed only a few days before the action was instituted and the provisions were difficult to reconcile, the court qualified their holding finding "that Congress intended to provide for a 180-day stay *in this instance.*" *Id.* (emphasis added). The court then added a further disclaimer in a footnote, "[a]n action which is further along in the judicial process would involve different considerations." *Id.* at 20 n.1. [Recall, the action presently before the Court was commenced on June 29, 1990 and the receiver was appointed February 22, 1991.]

In a subsequent case, *International Fidelity Ins. Co. v Yorkville Federal Savings and Loan Ass'n*, No. 90 CIV 3767 (S.D.N.Y. Oct. 19, 1990) (available on Westlaw at 1990 WL 165720), the plaintiff, as beneficiary, was seeking to recover funds due and owing under a letter of credit. The plaintiff moved for summary judgment and a week prior to the return date for Yorkville's motion, the OTS declared Yorkville insolvent and appointed RTC as receiver. The RTC then moved for the imposition of a stay. The plaintiff, Fidelity, argued that a 90-day stay would be appropriate under 12 U.S.C. § 1821(d)(12). On the other hand, the RTC argued for a 180-day stay, contending that the plaintiff must first process their claim through administrative channels before judicial review is available. The court therein ruled in accordance with the *Tuxedo II* court's interpretation of the legislative history and granted a stay for the period during which the plaintiff proceeds administratively with his claim. However, the court's decision in *Yorkville* is somewhat impuissant. Rather than examining the RTC's argument or elucidating an independent rationale, the court cited extensively to *Tuxedo II* and then went on to adopt that court's decision, without even addressing the time concerns noted by the *Tuxedo II* court.

The theory advanced by the RTC in these cases is premised upon their argument that under FIRREA, the RTC as receiver may determine claims, § 1821(d)(3)(A). They aver that this authority is mandatory and supported by 12 U.S.C. § 1821(d)(13)(D), which states that no court shall have jurisdiction to determine a claim where the assets of any depository institution are under the control of the Corporation, which has been appointed receiver. Next, RTC asserts that they have a 180-day period in which to determine claims, 12 U.S.C. § 1821(d)(5)(A)(i). Finally, RTC notes that section 1821(d)(6) provides for an appeals process from the disallowance of a claim at which time a claimant can file suit or continue an action commenced before the appointment of a receiver or seek administrative review.

166

Although artfully crafted, RTC's hypothesis fails to construe the statutory scheme as a whole. First, relying on section 1821(d)(3)(A) in conjunction with 12 U.S.C. § 1821(d)(13)(D), the RTC asserts that the RTC's right to administratively determine claims is mandatory. However, these provisions do not mandate a compulsory claims procedure in all cases. Rather, this is the only available method for seeking relief, when the RTC is installed as receiver prior to a party seeking relief. 12 U.S.C. § 1821(d)(5)(A)(i). However, once a court has already obtained jurisdiction over the parties, that jurisdiction is not lost because a receiver has been appointed. In fact, the Act accounts for the possibility of ongoing litigation and provides that after coming under the controlling statute (FIRREA), a pending court action shall be suspended for 90 days upon the request of the receiver, 12 U.S.C.(D)(12)(A)(B).

Finally, the RTC propounds that the imposition of a 180-day stay is mandated, when read in conjunction with 12 U.S.C. § 1821(d)(6)(A), which states that sixty days after the claim is disallowed or the 180-day claim review period expires, the claimant may seek judicial review in federal district court or *continue an action commenced before the appointment of the receiver* or seek administrative review. (emphasis added). Notwithstanding, this argument is not compelling. Although the administrative claims procedure is not mandatory for claims filed prior to the instatement of a receiver, a claimant is not precluded from exercising his right to file a claim with the RTC following their appointment. Moreover, as specifically provided by 12 U.S.C. § 1821(d)(5)(F)(ii), which deals with the legal effect of filing a claim, subject to the stay provisions of paragraph (12)(A), the filing of a claim with the receiver shall not prejudice any right of a claimant to continue any action which was filed before the appointment of the receiver.

While the courts in both *Tuxedo II* and *Yorkville* purport to base their decisions on the legislative history underlying the enactment of FIRREA, it appears they did not fully delve into the reasoning behind its various provisions. For instance, neither court makes reference to the Supreme Court case of *Coit Independent Joint Venture v Federal Savings and Loan Insurance Corporation,* 109 S. Ct. 1361 (1989). Yet, as stated in the legislative history, the very basis for the 180-day provision as well as the complimentary appeal section is based on the concerns addressed in *Coit.* "This construct of administrative resolution and de novo judicial determination is responsive to the constitutional and statutory concerns. . .outlined by the Supreme Court in *Coit.*" H.R. Rep No. 101-54(I), 101st Cong., 1st Sess., *reprinted in*

■■■

1989 U.S. Code Cong. & Admins. News 86, 214 (hereinafter cited as House Report).

In *Coit,* the FSLIC was appointed as receiver for an insolvent savings and loan. Therein, the Court analyzed a similar statutory enactment, National Housing Act. The government argued that since they had the authority to establish an administrative claims procedure, they also had the authority to require claimants to exhaust that procedure before going to court. *Id.* at 1374. As support for this contention, the government urged that FSLIC would be unable to fulfill its statutory responsibility to liquidate a failed savings and loan in "an orderly manner" or to determine which claims to pay, settle or contest, unless it had an initial opportunity to consider all the claims in a centralized claims process, before claimants could proceed to court. *Id.* The Court recognized that the statutes did not explicitly mandate the exhaustion of administrative remedies as a precondition for filing suit. However, when read in conjunction with the statutory dictates that FSLIC provide for orderly administration, pay valid claims, etc., as well as their grant of authority to establish rules for the receivership, the Court opined that a mandatory centralized claims process would be a reasonable exercise of their powers so long as there was a clear and reasonable time limit on FSLIC's consideration of claims. *Id.* at 1374-75. Note, this orderly administration is in relation to the processing of claims against *failed financial institutions. See, Coit,* 109 S.Ct. at 1374 (emphasis added). The Court also addresses those situations where an action was instituted against a savings and loan prior to the appointment of a receiver.

. . . FSLIC will receive notice of those claims when it steps into the shoes of the failed savings and loan and takes control of its assets. Trial courts can then determine, in their discretion, whether to stay the proceedings for a limited time, based on such factors as the stage of the litigation and FSLIC's need to assess the possibility of settling the claims. *Id.* at 1374-75. (citations omitted) In *Coit* the suit was filed after the appointment of the receiver, the Court then determined that the claims procedure was inadequate based on its lack of a reasonable time limit, which essentially relegated claims to a "black hole." *Id.* at 1375-76. Accordingly, it held that "[a]administrative remedies that are inadequate need not be exhausted." *Id.* at 1375.

As noted above, *Coit* was of vital importance to the enactment of FIRREA. As expounded by *Coit,* exhaustion of administrative reme-

dies is a proper prerequisite to court action, when clear time limits are established for the administrative review of a claim. "The claims determination procedure set forth in subsection (1) [12 U.S.C. § 1821(d)(5)] creates a system which not only meets the concerns raised by the *Coit* case, but also enables the FDIC [or RTC] to dispose of the bulk of claims against *failed financial institutions* expeditiously and fairly." House Report at 215. (emphasis added)

Even acknowledging the FIRREA includes an administrative claims procedure with reasonable time limits, it does not follow that actions filed prior to the appointment of a receiver are subject to that procedure. Rather, as is apparent from both *Coit* and the legislative history of FIRREA, it is appropriate that claims filed against a failed financial institution first be processed through an administrative claims procedure, prior to the filing of court action.

Based on the foregoing analysis, the defendant's, RTC, request for the imposition of a 180-day stay must be DENIED. When enacting FIRREA, Congress provided no mandatory language requiring the administrative processing of claims when a lawsuit was filed prior to a receiver's appointment. Yet, there is a specific section which suspends ongoing legal actions in which an insured depository institution is involved for ninety days upon the appointment and request of a receiver, 12 U.S.C. § 1821(d)(12). Contrastly, in the event a claim is filed against a failed depository institution after the appointment of a receiver, FIRREA provides for the administrative processing of claims, prior to a party seeking relief from the courts. 12 U.S.C. § 1821(d)(5). Additionally, a party which has instituted a suit prior to appointment of a receiver still has the right to file a claim with the receiver. Moreover, as specifically provided by 12 U.S.C. § 1821(d)(5)(F)(ii), which deals with the legal effect of filing a claim, subject to paragraph (12)(A) [the 90-day stay provision], the filing of a claim with the receiver shall not prejudice any right of a claimant to continue any action which was filed before the appointment of the receiver.

Accordingly, as stated above, the defendant's request for the imposition of a 90-day stay is GRANTED; whereas, the request for a 180-day stay is DENIED. This action will be stayed for ninety (90) days from the date of this order.

DONE AND ORDERED in Chambers at the Broward County Courthouse, Fort Lauderdale, Florida 33301, this 17th day of May, 1991.