Michael **GULLEY** et al., Plaintiffs,

v.

**SUNBELT SAVINGS FSB, et al., Defendants.**

Civ. A. No. 3-88-3062-H.

United States District Court,
N.D. Texas,
Dallas Division.

June 8, 1989.

Savings and Loan System. In 12 C.F.R. § 569c.11(a)(6), the Receiver is directed to observe the priorities of creditors established by state law, in states such as Texas that have enacted a specific priority statute governing the liquidation of state chartered savings and loans by the state authorities. Under the Texas priority statute, claims of depositors and secured creditors have priority over the claims of general unsecured creditors, like Plaintiffs'. *See* Tex. Rev.Civ.Stat. Ann. art. 852a, § 8.09(g) (Vernon Supp.1988).

Because Old Sunbelt was insolvent by nearly $2 billion, it was clear that if Old Sunbelt were liquidated, insufficient assets would be available to pay claims of even the highest priority secured creditors, and that unsecured creditors in the lower priority class would receive nothing. Even though, Old Sunbelt was not "liquidated" in the traditional sense, its assets were transferred giving priority to depositors and secured creditors in New Sunbelt and leaving the liabilities of remaining unsecured creditors with the Receiver. *See* Bank Board's Brief at 9–11.

Richard Jackson, Dallas, Tex., for plaintiffs.

Kenneth B. Tomlinson, Baker & Botts, Dallas, Tex., Kirk K. Van Tine, Robert Asher, Jordan Luke, Gen. Counsel, Dorothy Nichols, Sr. Associate Gen. Counsel, Federal Home Loan Bank Bd., Washington, D.C., for Federal Home Loan Bank Bd.

Lee R. Larkin, J. Scott Carothers, Andrews & Kurth, Houston, Tex., for FSLIC.

Nina Cortell, Haynes & Boone, Dallas, Tex., for Sunbelt.

## MEMORANDUM OPINION AND ORDER

SANDERS, District Judge.

Before the Court are Defendant–Intervenors' Motions for Summary Judgment, filed January 13, 1989; Plaintiffs' Response filed March 8, 1989; Movants' Replies, filed March 20, 1989; Plaintiffs' Supplemental Response, filed March 27, 1989; and Movants' Supplemental Reply, filed April 4, 1989.

### Background

This dispute is related to two other actions pending in this district, *Gulley, et al. v. Sunbelt Savings Ass'n, et al.,* Civil Action No. CA–3–88–1417–D and *Sunbelt Savings Ass'n, et al. v. GSD, Ltd., et al.,* Civil Action No. CA–3–88–2194–C.[1] In August of 1988, the Federal Home Loan Bank Board appointed the FSLIC as Receiver for Old Sunbelt and created a new savings and loan association, New Sunbelt. The Bank Board directed the FSLIC as Receiver in a purchase and assumption transaction to transfer the majority of Old Sunbelt's assets. Bank Board's Brief at 2.

On November 10, 1988, Plaintiffs filed this action against New Sunbelt in Texas State Court. In December, the Bank Board and the FSLIC intervened in this action and removed the case to this Court, pursuant to 12 U.S.C. § 1730(k)(1). Bank Board's Brief at 1. In this action, Plaintiffs allege that the transfer of Old Sunbelt's assets violated the Texas statute prohibiting fraudulent transfers. Plaintiffs' Original Petition at 3. *See* Tex.Bus. & Comm.Code Ann. §§ 24.005 and 24.006 (Vernon 1987). Defendant–Intervenors move for summary judgment, arguing that the declaratory judgment Plaintiffs seek would require that the Court void the actions of the Bank Board and the FSLIC in transferring the assets of Old Sunbelt. Movants argue that the Texas fraudulent transfer statute is not applicable to the transaction. Additionally, they contend that even if it were applicable, the Texas statute would be preempted. Bank Board's Brief at 3.

### Analysis

In *Coit Independence Joint Venture v. FSLIC,* —— U.S. ——, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989), the Supreme Court held that *"the enabling legislation* of FSLIC and the Bank Board" does not preempt state law. —— U.S. at ——, 109 S.Ct. at 1375 (emphasis added). Preemption may result, however, in other circumstances. Federal law may supersede state law in three ways. (1) "when acting within constitutional limits, Congress is empowered to preempt state law by so stating in express terms"; (2) "congressional intent to preempt state law in a particular area may be inferred where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress 'left no room' for supplementary state regulation"; and (3) "in those areas where Congress has not completely displaced state regulation, federal law may nonetheless preempt state law to the ex-

---

**1.** The first case, brought by these same Plaintiffs, concerns land known as the Encino Park property. In 1984, Old Sunbelt was one of the participants in a 50,000,000.00 loan to GSD, Ltd. for the development of the property. When GSD and the guarantors defaulted on the loan, Sunbelt foreclosed and the Plaintiffs filed suit to challenge the foreclosure. The second case was brought by Old Sunbelt to recover the amount due on the Encino Park note and guaranties.

tent it conflicts with federal law." *California Federal Savings & Loan Assn. v. Guerra*, 479 U.S. 272, 280–81, 107 S.Ct. 683, 689–90, 93 L.Ed.2d 613 (1987). Such conflict occurs either because (a) "compliance with both federal and state regulations is a physical impossibility"[2] or (b) the state law stands "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." 479 U.S. at 281, 107 S.Ct. at 689 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)).

The third reason for preemption—conflict of laws—is not inconsistent with the Court's holding in *Coit*. Thus, the question in the instant case is whether the Texas fraudulent transfer statute stands as an obstacle to the accomplishment and objectives of Congress, whether it conflicts with federal law. The Court agrees with Movants that: a conflict exists; that Texas law is preempted in this case; and that Movant's summary judgment motion should be granted.

Congress created a comprehensive framework for the regulation of federally insured thrifts, granting the Bank Board broad discretionary powers to regulate the savings and loan industry. *See* 12 U.S.C. §§ 1421–1449; 12 U.S.C. §§ 1461–1468; 12 U.S.C. §§ 1701–1730; *Fidelity Savings & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 144–45, 156, 159–62, 102 S.Ct. 3014, 3018, 3024, 3025–27, 73 L.Ed.2d 664 (1982). Con-

gress has empowered the FSLIC as Receiver to choose among several courses of action, including the merger of a failed association with another insured institution, the organization of a new federal association to take over the assets of the failed association, or such other disposition of the matter as the FSLIC deems appropriate. 12 U.S.C. § 1729(b)(1)(A). The FSLIC may choose the course of action which "it deems to be in the best interest of the association, its savers, and the Corporation." 12 U.S.C. § 1729(b)(1)(A).

The statutory grant of flexibility and discretion to the Receiver may not be limited by state imposed restrictions. *de la Cuesta* at 155, 102 S.Ct. at 3023.[3] Plaintiffs argue that Congress could not have intended the federal statute to preempt state law prohibiting fraud. While this statement may be true, Congress gave the FSLIC the power to dispose of a failed institution in accordance with broad general guidelines. 12 U.S.C. § 1729(b)(1). When, as in this case, the Receiver distributes assets in accordance with the priorities established by Texas law,[4] such a transfer of assets is, by definition, not fraudulent because it is authorized by law. *See, e.g.*, art. 852a, § 8.09(g).

Plaintiffs also rely on *Coit* to defend against the conflicts/preemption theory. In *Coit*, however, the Court recognized that § 1464(d)(6)(C) prohibits "collateral at-

---

**2.** 479 U.S. at 281, 107 S.Ct. at 689 (quoting *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217–18, 10 L.Ed.2d 248 (1963)).

**3.** The Court held that "Congress invested the Board with broad authority to regulate federal savings and loans so as to effect the statute's purposes, and plainly indicated that the Board need not feel bound by existing state law." *de la Cuesta* at 162, 102 S.Ct. at 3027.

**4.** As of June 1988, before the appointment of the Receiver, Old Sunbelt was insolvent by $1,894,-984,000.00. In Resolution No. 88–788P, the Bank Board directed the FSLIC to liquidate claims against Old Sunbelt in accordance with the priorities established in 12 C.F.R. § 596c.11 of the Rules and Regulations for the Federal Savings and Loan System. In 12 C.F.R. § 569c.11(a)(6), the Receiver is directed to observe the priorities of creditors established by state law, in states such as Texas that have

enacted a specific priority statute governing the liquidation of state chartered savings and loans by the state authorities. Under the Texas priority statute, claims of depositors and secured creditors have priority over the claims of general unsecured creditors, like Plaintiffs'. *See* Tex. Rev.Civ.Stat.Ann. art. 852a, § 8.09(g) (Vernon Supp.1988).

Because Old Sunbelt was insolvent by nearly $2 billion, it was clear that if Old Sunbelt were liquidated, insufficient assets would be available to pay claims of even the highest priority secured creditors, and that unsecured creditors in the lower priority class would receive nothing. Even though, Old Sunbelt was not "liquidated" in the traditional sense, its assets were transferred giving priority to depositors and secured creditors in New Sunbelt and leaving the liabilities of remaining unsecured creditors with the Receiver. *See* Bank Board's Brief at 9–11.

tacks attempting to restrain the receiver from carrying out its basic functions." —— U.S. at ——, 109 S.Ct. at 1369. Movants argue and the Court agrees that the FSLIC's distribution of the assets of the Old Sunbelt receivership estate in accordance with the Bank Board's regulations is a basic receivership function that comes squarely within the ambit of § 1464(d)(6)(C). *See also, supra,* at 3.

Accordingly, Movants' Motion for Summary Judgment is GRANTED. A Final Judgment will be entered herewith.

SO ORDERED.

### JUDGMENT

This Judgment is entered pursuant to the Court's Memorandum Opinion and Order, dated June 7, 1989.

IT IS ORDERED, ADJUDGED and DE-CREED by the Court that Plaintiffs take nothing by their suit against Defendants; that Plaintiffs' claims be, and each claim is hereby, DISMISSED on the merits.

Costs of court are taxed against the Plaintiffs.