**SWEET JAN JOINT VENTURE,
et al., Plaintiffs,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, as Manager of the FSLIC Resolution Fund, and Resolution Trust Corporation, Receiver for Sunbelt Savings, FSB, Defendants.**

**Civ. A. No. CA3–89–1757–D.**

United States District Court,
N.D. Texas,
Dallas Division.

Dec. 11, 1992.

---

7. *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 453–54, 62 S.Ct. 676, 677–78, 86 L.Ed. 956 (1942).

**1254**

Alan S. Loewinsohn, Gary D. Eisenstat, and Monica L. Luebker of Figari & Davenport, L.L.P., Dallas, TX, for plaintiffs.

Michael R. Swan and Thomas J. Fisher of FDIC–Legal Div., Dallas, TX, for defendant FDIC.

Alan Wright and Bruce L. Dean of Haynes and Boone, L.L.P., Dallas, TX, for defendant RTC.

## MEMORANDUM OPINION AND ORDER

FITZWATER, District Judge.

In this action, defendant Resolution Trust Corporation ("RTC–Receiver") as Receiver for Sunbelt Savings, FSB ("New Sunbelt"), moves the court for summary judgment on all of plaintiffs' claims. Defendant Federal Deposit Insurance Corporation, as Manager of the FSLIC Resolution Fund ("FDIC–Corporate"), moves the court to clarify or reconsider its June 24, 1992 memorandum opinion and order. FDIC–Corporate also moves the court to realign the parties. For the reasons that follow, the court grants RTC–Receiver's motion for summary judgment and FDIC–Corporate's motion to reconsider, and grants FDIC–Corporate's motion to realign to the extent of permitting it to present its case at trial as if it were the plaintiff.

## I

The court assumes familiarity with its several prior opinions in this case. Following issuance of the court's June 24, 1992 opinion, *Sweet Jan Joint Venture v. FDIC*, 809 F.Supp. 1246 (N.D.Tex.1992), defendant New Sunbelt failed and was replaced by defendant RTC–Receiver.

RTC–Receiver now moves for summary judgment as to all of plaintiffs' causes of action. FDIC–Corporate moves the court to clarify or reconsider its earlier opinion, but the motion actually raises a new federal preemption argument. Because the issue presented is separately raised by RTC–Receiver, the court discerns no impediment to its now considering FDIC–Corporate's argument in tandem with RTC–Receiver's motion.

## II

### A

Although not denominated as such, RTC–Receiver's first argument addresses plaintiffs' breach of contract claim. RTC–Receiver contends it cannot be held liable for breaching the Park Forest Wrap Note because the BancTexas Note was accelerated on August 11, 1988, prior to the date New Sunbelt became owner and holder of the Park Forest Wrap Note. Therefore, Old Sunbelt was liable for any failure to perform pursuant to the Park Forest Wrap Note, and this liability was not one that New Sunbelt assumed from Old Sunbelt on August 19, 1988, when the Federal Savings and Loan Insurance Corporation, as receiver for Old Sunbelt ("FSLIC–Receiver") entered into an acquisition agreement with New Sunbelt.[1] Plaintiffs point out that the court has already recognized that New Sunbelt may be held liable for its own conduct that transpired after it acquired the Park Forest Wrap Note. *See* May 2, 1990 Op. at 4. They argue for various reasons that they are entitled to a trial of their breach of contract claim. The court now turns to the relevant arguments.

All parties recognize that New Sunbelt did not assume Old Sunbelt's liabilities to unsecured general creditors that accrued prior to Old Sunbelt's failure. *See also Gulley v. Sunbelt Sav., F.S.B.*, 902 F.2d 348, 349 (5th Cir.1990), *cert. denied*, 498 U.S. 1025, 111 S.Ct. 673, 112 L.Ed.2d 665 (1991); *B.L. Nelson & Assocs., Inc. v. Sunbelt Sav., FSB*, 733 F.Supp. 1106, 1109 (N.D.Tex.1990). Therefore, the question presented is whether New Sunbelt became independently obligated to perform pursuant to the Park Forest Wrap Note.

In the court's May 2, 1990 opinion, it held that plaintiffs' "claim for set off arises in part from the conduct of New Sunbelt *after* it acquired the wrap note and Sweet Jan note from FSLIC–Receiver." *Id.* at 4. The court determined that New Sunbelt could not "avoid liability for its own actions by reference to an agreement predating those actions." *Id.* Plaintiffs urge the court that these prior holdings squarely resolve RTC–Receiver's arguments.

■ Based upon the court's fuller understanding of the facts and issues, derived from the several subsequent motions that it has received and decided in this case, the court concludes as a matter of law that New Sunbelt did not undertake any contractual obligation with respect to the Park Forest Wrap Note. The summary judgment evidence establishes that the BancTexas Note was accelerated on or about August 11, 1988. According to the terms of the Park Forest Wrap Note, the obligation to pay the indebtedness arose when the BancTexas Note was accelerated due to a default declared by BancTexas. On August 11, 1988 Old Sunbelt was the holder of the Park Forest Wrap Note and was therefore responsible for the underlying obligation on the BancTexas Note.[2] Old Sun-

---

**1.** In its reply brief, RTC–Receiver contends § 4.10 of the Loan Agreement between Texoma Savings Association of Grayson County, Texas and Park Forest, Ltd. excuses New Sunbelt from any liability. *See* RTC–Receiver Rep.Br. at 2–3, 5–6. The court has not considered this argument.

**2.** The Park Forest Wrap Note provided that "Holder, solely for the benefit of Maker, agrees that in the event the indebtedness evidenced by any of the Prior Notes is accelerated due to a default declared by the holder thereof ..., Holder shall advance to the holder of such indebtedness the full amount of such debt that has been

belt was obligated to "advance to the holder of such indebtedness the full amount of such debt that has been accelerated."

It is undisputed that Old Sunbelt breached the Park Forest Wrap Note by not paying the indebtedness on the BancTexas Note. But it is contested whether New Sunbelt also had obligations of its own. Plaintiffs contend the holder of the Park Forest Wrap Note had two obligations, one of which was to pay the entire principal balance of the BancTexas Note in the event the note was accelerated. They argue that New Sunbelt was required as the holder of the note to pay the entire indebtedness. The court disagrees.

On August 11, 1988 BancTexas accelerated the note. At that moment, Old Sunbelt became obligated under the Park Forest Wrap Note to pay the holder of the Banc-Texas Note. Old Sunbelt was declared insolvent eight days later. FSLIC–Receiver retained Old Sunbelt's liability on the Park Forest Wrap Note. New Sunbelt neither assumed the liability nor undertook an obligation of its own.

Plaintiffs advance the separate argument that New Sunbelt was contractually obligated on the Park Forest Wrap Note because Park Forest, Ltd. ("Park Forest") had the right to pay the indebtedness due on the BancTexas Note and then receive a credit of 110% of any such payment against the Park Forest Wrap Note. Plaintiffs reason that New Sunbelt did not breach this obligation until on or about September 2, 1988, when Park Forest filed suit against New Sunbelt to force it to meet this obligation. The court declines to accept this position.

The relevant language of the Park Forest Wrap Note addresses the payment of indebtedness in the context of when it becomes due and payable. The Park Forest Wrap Note provides that when payment becomes due and payable on the BancTexas Note, Park Forest has the right to pay the indebtedness and credit the payment in an amount equal to 110% to the next succeeding payments due under the Park Forest Wrap Note. This provision in the Park

accelerated...." (*quoted in* P.Resp.Opp. MSJ at 4).

Forest Wrap Note precedes the discussion of acceleration, and appears to pertain only to the payment of installments under the BancTexas Note. This language does not expressly give Park Forest any option *after* the BancTexas Note is accelerated. Even if it did give Park Forest such an option, this does not alter the fact that the claim for the indebtedness arose while Old Sunbelt was the holder of the Park Forest Wrap Note.

■ Plaintiffs also oppose summary judgment on the basis of evidence that shows New Sunbelt considered whether to pay the balance on the BancTexas Note and decided not to do so. *See* October 26, 1992 Letter to the Court from Alan S. Loewinsohn, Esq., Ex. A. The content of the September 1, 1988 "Specific Request for Approval" document does not alter the fact that Old Sunbelt was the holder of the Park Forest Wrap Note who became obligated to pay the BancTexas Note. New Sunbelt did not assume this liability when Old Sunbelt failed. New Sunbelt did, of course, become the holder of the Park Forest Wrap Note. That New Sunbelt considered, and rejected, the possibility of resuming underlying lien payments as an alternative to allowing BancTexas to foreclose on certain collateral for the note, does not permit the court to hold that New Sunbelt thereby *obligated* itself to pay a liability that FSLIC–Receiver retained.

Plaintiffs' breach of contract claim against RTC–Receiver is dismissed.

#### B

■ The court next considers RTC–Receiver's argument, and FDIC–Corporate's separately-filed contention, that plaintiffs' fraudulent conveyance claim is preempted by *federal* law. The court is persuaded that the claim is preempted.

Two opinions written by Judge Sanders of this court set out the applicable jurisprudence of preemption as it relates to the Texas Uniform Fraudulent Transfer Act, Tex.Bus. & Comm.Code Ann. §§ 24.001–

.013 (West 1987). *See Valley Ranch Dev. Co., Ltd. v. Sunbelt Sav. FSB*, 714 F.Supp. 817 (N.D.Tex.1989), *aff'd on other grounds sub nom. Gulley v. Sunbelt Sav. F.S.B.*, 902 F.2d 348 (5th Cir.1990), *cert. denied*, 498 U.S. 1025, 111 S.Ct. 673, 112 L.Ed.2d 665 (1991), and *Gulley v. Sunbelt Sav. F.S.B.*, 714 F.Supp. 819 (N.D.Tex.1989), *aff'd on other grounds*, 902 F.2d 348 (5th Cir.1990), *cert. denied*, 498 U.S. 1025, 111 S.Ct. 673, 112 L.Ed.2d 665 (1991). In these cases, Judge Sanders held that Texas law regarding fraudulent transfers is preempted when it "stands as an obstacle to the accomplishment and objectives of Congress." *Valley Ranch*, 714 F.Supp. at 818; *Gulley*, 714 F.Supp. at 821. Judge Sanders held Texas law to be preempted in the context of the transfer of Old Sunbelt's assets to New Sunbelt, as part of a purchase and assumption transaction, effected pursuant to the FSLIC's power to dispose of a failed institution in accordance with broad general guidelines. *Valley Ranch*, 714 F.Supp. at 818; *Gulley*, 714 F.Supp. at 821.

Defendants contend plaintiffs' state law fraudulent transfer claim is preempted because it stands as an impediment to the FSLIC's accomplishment of congressionally-mandated objectives. Plaintiffs do not contest that the Texas fraudulent transfer law *can* be preempted in appropriate circumstances. Instead, they contend the law fully applies to the type of transaction that the December 30, 1988 conveyance represents.[3]

Notwithstanding the existence of material fact questions concerning the intent that New Sunbelt had in entering into the December 30, 1988 purchase and assignment[4] agreement, or in selecting the Park Forest Wrap Note and Sweet Jan Note for inclusion in the sale of assets to FSLIC–Corporate, *see* June 24, 1992 Op. at 1251–52, it is undisputed that the FSLIC entered into the agreement, and approved it, in its corporate capacity. In its pre-FIRREA form, which

is the relevant context for today's case, the FSLIC was a government agency. *See Thurman v. FDIC*, 889 F.2d 1441, 1443 n. 1 (5th Cir.1989) (as government agency, FSLIC has 60 days to file notice of appeal); *Acron Invs., Inc. v. FSLIC*, 363 F.2d 236, 240 (9th Cir.) (FSLIC is government agency), *cert. denied*, 385 U.S. 970, 87 S.Ct. 506, 17 L.Ed.2d 434 (1966). It was charged with responsibility for insuring accounts at the nation's thrift institutions. Congress conferred broad powers upon it to carry out its functions, which were vital to the national economy. *See United States v. Gaubert*, —— U.S. ——, ——, 111 S.Ct. 1267, 1277, 113 L.Ed.2d 335 (1991) (FSLIC possessed broad statutory authority to supervise financial institutions); *FSLIC v. Murray*, 853 F.2d 1251, 1256 (5th Cir.1988) (a basic FSLIC objective is promoting confidence and stability in financial institutions).

The FSLIC's essential role was no less applicable to the facts of the present case. After New Sunbelt was created, it was assigned certain assets and liabilities of several failed thrifts, including Old Sunbelt. The FSLIC insured the accounts of the acquired associations and of New Sunbelt. It decided to provide immediate financial assistance to New Sunbelt pursuant to its authority under the National Housing Act. It was part of the FSLIC's statutory functions to protect its insurance fund by undertaking acts that reduced the risks of loss posed to the fund by the insured institutions. This function continued even after the August 19, 1988 transaction was consummated, and was an obligation of the FSLIC on December 30, 1988.

Plaintiffs are correct that Judge Sanders' opinions in *Valley Ranch* and *Gulley* present distinguishable fact situations. Both involved the initial receivership function of effecting a purchase and assumption transaction. But the reasoning adopted in these cases appropriately informs the court's decision in the present case.

---

3. Plaintiffs contend in the alternative that defendants have waived the preemption defense. The court disagrees. This affirmative defense is properly pleaded by way of amended answer and is before the court for resolution.

4. In the court's June 24, 1992 opinion, it inadvertently labeled this agreement as a "purchase and *assumption* agreement." *See* Op. at 1250.

"[S]ensitive federal interests [are] implicated when FSLIC rescues an insolvent savings and loan." *Murray,* 853 F.2d at 1256. If the FSLIC's decisions are subjected to state law theories such as the one plaintiffs urge, its ability to operate as Congress intended could be unduly chilled if not completely compromised. The instant case is illustrative. Plaintiffs allege that New Sunbelt effected a fraudulent conveyance. But the relief they seek would undo a transaction that would not have occurred without FSLIC approval. The FSLIC's decision to purchase $1.25 billion in assets from a regulated institution is therefore subject to being abrogated on the basis of state law, notwithstanding that plaintiffs' allegations are lodged against the transferor institution.

If the FSLIC must make decisions with a view toward possible state law challenges, its authority and discretion will be fettered in practice if not in precept. Congress intended that it would oversee the FSLIC's exercise of its core functions. The Texas fraudulent conveyance law is not an exception to such federal oversight in the context of the present case. Texas law presents an obstacle to accomplishment of congressional objectives where, as here, the FSLIC's assistance decisions can be overturned on the basis of state law.

The court therefore holds that plaintiffs' state law fraudulent conveyance claim is preempted, and it is dismissed.

### C

■ RTC–Receiver next contends it cannot be liable for breach of a duty of good faith and fair dealing. The evidence does not support a finding that New Sunbelt and Park Forest had a special relationship of the type necessary to prevail on such a claim. The court therefore dismisses this cause of action as to RTC–Receiver.

### D

The court turns finally to RTC–Receiver's motion as it relates to plaintiffs' breach of contract and attorney's fee claims. For the reasons stated *supra* at § II(A), RTC–Receiver is not liable for breach of contract. Without reaching the question whether RTC–Receiver can be held liable for attorney's fees pursuant to state law, the court holds there is no contractual claim on which to predicate such a fee request. These claims are dismissed as to RTC–Receiver.

### III

■ The court now considers FDIC–Corporate's motion for realignment of parties or alternative request to present its evidence first and to open and close the argument. FDIC–Corporate urges that it should be aligned as plaintiff and that plaintiffs should be aligned as defendants. Plaintiffs oppose this relief, contending their affirmative claims should not be dismissed and, even if they are dismissed, plaintiffs will still bear the more substantial burden of proof.

The court concludes that FDIC–Corporate should be permitted to present its evidence first and otherwise to participate at trial as if it were the plaintiff. Until FDIC–Corporate establishes that it is entitled to recover on the Sweet Jan Note, Modification Note, and guaranties, the plaintiffs are not obligated to adduce evidence to support their defenses to liability. The clearest manner in which to present this case to the jury is for FDIC–Corporate to go first, presenting evidence that it is entitled to recover on the notes and related guaranties. Plaintiffs should then be heard in their defense.

The court declines, however, to realign the parties. Given the substantial number of pleadings and opinions filed in this case, it could cause considerable confusion to re-label the parties at this late date. Further, in anticipation of trial, the parties have already submitted a proposed pretrial order and trial materials that assume their present alignment. The parties should not be put to the expense of redoing these materials. The court can accomplish the intended purpose of realignment by means of the narrower vehicle of reordering the presentation of evidence and argument, coupled with appropriate jury instructions.

\*   \*   \*   \*   \*   \*

In summary, plaintiffs' claims against RTC–Receiver are dismissed. Plaintiffs' fraudulent conveyance claim is also dismissed as to FDIC–Corporate. FDIC–Corporate shall have the right to proceed at trial as if it were the plaintiff.

SO ORDERED.