# Matter of AL WAZZAN

*Decided October 20, 2010[1]*

U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
Administrative Appeals Office

(1)   Although section 204(j) of the Immigration and Nationality Act, 8 U.S.C. § 1154(j) (2000), provides that an employment-based immigrant visa petition shall remain valid with respect to a new job if the beneficiary's application for adjustment of status has been filed and remained unadjudicated for 180 days, the petition must have been "valid" to begin with if it is to "remain valid with respect to a new job."

(2)   To be considered "valid" in harmony with related provisions and with the statute as a whole, the petition must have been filed for an alien who is "entitled" to the requested classification and that petition must have been "approved" by a U.S. Citizenship and Immigration Services ("USCIS") officer pursuant to his or her authority under the Act.

(3)   Congress specifically granted USCIS the sole authority to make eligibility determinations for immigrant visa petitions under section 204(b) of the Act.

(4)   An unadjudicated immigrant visa petition is not made "valid" merely through the act of filing the petition with USCIS or through the passage of 180 days.

ON BEHALF OF APPLICANT:  Angelo Paparelli, Esquire, Irvine, California

BEFORE:  Perry Rhew, Chief, Administrative Appeals Office

The Director, California Service Center, denied the Application to Register Permanent Residence or Adjust Status (Form I-485) on October 6, 2004.[2] In a separate action on November 8, 2004, the director certified the decision

---

[1] This matter was initially decided on January 12, 2005, and designated as an "adopted decision" of U.S. Citizenship and Immigration Services, guiding USCIS officers in their administration of the immigration laws.  It was not designated as precedent under 8 C.F.R. § 1003.1(i) (2010) until October 20, 2010.  On our own motion, we reopen and amend the decision for the limited purpose of making editorial revisions consistent with designation of the decision as precedent.

[2]  After the director denied the underlying immigrant visa petition, the petitioner filed a complaint for declaratory and injunctive relief in the United States District Court, Central District of California.  *Al Wazzan (USA), Inc. v. Tom Ridge*, CV04-6575-NM (RZX) (filed Aug. 9, 2004).  On November 15, 2006, the district court entered judgment in favor of the Government.

to the Administrative Appeals Office ("AAO") for review. The director's decision will be affirmed.

The applicant is a native and citizen of Kuwait who seeks to adjust his status to permanent resident, despite never having shown eligibility for the immigrant visa classification on which his adjustment application is based. On two occasions, the director denied the Form I-140 immigrant visa petitions that his employer, Al Wazzan (USA), Inc. dba "Prime Casting," filed on his behalf. In accordance with section 245(a) of the Immigration and Nationality Act, 8 U.S.C. § 1255(a) (2000), the applicant is seeking to adjust his status as a multinational executive or manager pursuant to section 203(b)(1)(C) of the Act, 8 U.S.C. § 1153(b)(1)(C) (2000). Although the director denied the visa petition that was filed by the applicant's actual employer, the applicant states that he has now been offered employment by a second firm and claims that he should be allowed to adjust status based on this job offer.

On notice of certification, the applicant submits a brief in support of the application for adjustment of status. Citing section 204(j) of the Act, 8 U.S.C. § 1154(j) (2000), titled "Job Flexibility For Long Delayed Applicants For Adjustment of Status to Permanent Residence," the applicant asserts that U.S. Citizenship and Immigration Services ("USCIS") may not deny the adjustment application because the application had been pending for more than 180 days at the time it was adjudicated.

## I. FACTUAL AND PROCEDURAL HISTORY

This matter has a complex procedural history. The applicant's employer filed an initial Form I-140 immigrant visa petition (WAC 98 245 51887) in 1998, which the director denied on February 2, 2000. The AAO dismissed a subsequent appeal on January 8, 2001, affirming the director's decision to deny, and rejected a late motion to reopen the matter on July 22, 2003. No Form I-485 was ever filed in connection with this I-140 petition.

The applicant's employer filed a second Form I-140 immigrant visa petition (WAC 02 266 54969) on August 26, 2002. Additionally, the applicant immediately filed this Form I-485 application for adjustment of status on September 18, 2002, pursuant to the "concurrent filing" process that was implemented by USCIS on July 31, 2002. *See* 67 Fed. Reg. 49,561 (July 31, 2002), *codified at* 8 C.F.R. § 245.2(a)(2)(i)(B). After a number of intervening actions, the director ultimately denied the Form I-140 immigrant visa petition on August 3, 2003. Consistent with USCIS policy, the director also denied the Form I-485 application for adjustment of status on September 29, 2003, because an immigrant visa was not immediately available to the applicant. *See* Memorandum from William Yates, Deputy Exec. Assoc. Comm'r, USCIS, *Procedures for concurrently filed family-based or employment-based Form I-485 when the underlying visa petition is denied* (Feb. 28, 2003), *discussed*

*and reproduced in* Tammy Fox-Isicoff and H. Ronald Klasko, *The Child Status Protection Act: Is your Child Protected?*, 80 Interpreter Releases, No. 28, July 21, 2003, at 973 ("Service adjudicators should also deny the concurrently filed Form I-485 when the underlying visa petition is denied because the applicant has lost the claim to adjustment of status.").

Accordingly, at the time that the director denied the Form I-485 application for adjustment of status, the application had been pending for 376 days.[3]

## II.  ISSUE PRESENTED ON CERTIFICATION

This case presents the AAO with its first opportunity to construe this statutory provision and determine its effect on an application for adjustment of status if a visa petition is denied after the application is pending for 180 days.  In general, an alien may acquire permanent resident status in the United States through two legal mechanisms:  the alien may pick up an approved visa packet at an overseas consulate and be "admitted" to the United States for permanent residence; or, if the alien is already in the United States in a lawful nonimmigrant or parolee status, the alien may "adjust status" to that of an alien admitted for permanent residence. *Compare* section 211 of the Act, 8 U.S.C. § 1181 (2000), *with* section 245 of the Act.

Governing adjustment of status, section 245(a) of the Act[4] requires the adjustment applicant to have an "approved" petition:

> The status of an alien who was inspected and admitted or paroled into the United States or the status of any other alien having an *approved* petition for classification under subparagraph (A)(iii), (A)(iv), (B)(ii), or (B)(iii)

---

[3] There is some question as to the actual date of the director's denial of the adjustment of status application; regardless of how it is calculated, the application was pending more than 180 days.  The lengthy delay in adjudicating the application for adjustment of status was caused by a USCIS error, which in turn was the result of the concurrent filing process and the applicant's multiple visa petitions.  The Form I-485 application for adjustment of status was originally denied on October 30, 2002, or 42 days after filing, after the director erroneously matched the Form I-485 with the first denied Form I-140, instead of the second pending Form I-140.  After the applicant noted this error in 2003, the director reopened the matter and denied the application for a second time on September 29, 2003.  Since the first denial was predicated on USCIS error, the second decision will be considered the effective denial of the application for adjustment of status.

[4] In 2006, Congress amended section 245(a) of the Act by striking the phrase "under subparagraph (A)(iii), (A)(iv), (B)(ii), or (B)(iii) of section 1154(a)(1) of this title or" and inserting "as a VAWA self-petitioner." Violence Against Women and Department of Justice Reauthorization Act—Technical Corrections, Pub. L. No. 109-271, § 6(f)(1), 120 Stat. 750, 763 (2006).

of section 204(a)(1) or [sic] may be adjusted by the Attorney General [now Secretary of Homeland Security], in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if:
>    (1) the alien makes an application for such adjustment,
>    (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and
>    (3) an immigrant visa is immediately available to him at the time his application is filed.

(Emphasis added.)

In 2000, Congress passed the American Competitiveness in the Twenty-First Century Act of 2000, Pub. L. No. 106-313, 114 Stat. 1251 ("AC21"). Section 106(c) of AC21, 114 Stat. at 1254, amended section 204 of the Act by adding subsection(j), titled "Job Flexibility for Long Delayed Applicants for Adjustment of Status to Permanent Residence":

> A petition under subsection (a)(1)(D) [since redesignated section 204(a)(1)(F)] for an individual whose application for adjustment of status pursuant to section 245 has been filed and remained unadjudicated for 180 days or more shall remain valid with respect to a new job if the individual changes jobs or employers if the new job is in the same or a similar occupational classification as the job for which the petition was filed.

Section 212(a)(5)(A)(iv) of the Act, 8 U.S.C. § 1182(a)(5)(A)(iv) (2000), states further:

> A certification made under clause (i) with respect to an individual whose petition is covered by section 204(j) shall remain valid with respect to a new job accepted by the individual after the individual changes jobs or employers if the new job is in the same or a similar occupational classification as the job for which the certification was issued.

At the time AC21 went into effect, legacy Immigration and Naturalization Service ("INS") regulations provided that an alien worker could not apply for permanent resident status by filing a Form I-485, application to adjust status, until he or she obtained the approval of the underlying Form I-140 immigrant visa petition. *See* 8 C.F.R. § 245.2(a)(2)(i) (2000). Therefore, the process under section 106(c) of AC21 at the time of enactment was as follows: first, an alien obtained an approved employment-based immigrant visa petition; second, the alien filed an application to adjust status; third, if the adjustment application was not processed within 180 days, the underlying immigrant visa petition remained valid even if the alien changed employers or positions, provided the new job was in the same or similar occupational classification.

On certification, the applicant claims that the director improperly denied the underlying Form I-140 immigrant visa petition and, regardless of that

denial, further argues that section 106(c) of AC21 bars the director from denying the application for adjustment of status because it was pending for more than 180 days.[5] The applicant asserts that Congress enacted section 106(c) in an effort to reduce the backlogs of adjustment of status applications and ameliorate the negative consequences that these backlogs have on applicants. Citing *Tcherepnin v. Knight*, 389 U.S. 332 (1967), the applicant states that "the familiar canons of statutory construction require that remedial legislation should be construed liberally to effectuate Congress' intent." The applicant maintains that the only reasonable interpretation of section 106(c) is that "Congress in effect gave the USCIS a six-month deadline within which to adjudicate every non-frivolous employment-based immigrant visa petition and associated adjustment application." Accordingly, the applicant concludes that after 6 months have elapsed from the date of filing for adjustment of status, USCIS no longer has the authority to deny a "non-frivolous" Form I-485 application and the alien beneficiary has the statutory right to change jobs or employers.[6] The applicant has pointed to no legislative history that would support his assertion, in essence, that USCIS should overlook the statutory requirement of an "approved petition" for adjustment of status, in favor of granting permanent residence to those aliens with denied petitions, or even to aliens with unadjudicated I-140s, if the 180-day time period passes before the adjustment application is adjudicated.

The available legislative history does not shed light on Congress' intent in specifically enacting section 106(c) of AC21. While the legislative history for AC21 discusses congressional concerns regarding the nation's economic competitiveness, the shortage of skilled technology workers, U.S. job training, and the cap on the number of nonimmigrant H-1B workers, the legislative history does not specifically mention section 106(c) or any concerns regarding backlogs in adjustment of status applications. The legislative history briefly

---

[5] The denied Form I-140 (WAC 02 266 54969) was also certified to the AAO for review. In a separate decision that will be incorporated into the record of proceeding, the AAO upheld the director's decision to deny the immigrant visa petition. The applicant fails to mention that the director denied the previous Form I-140 (WAC 98 245 51887) and that the AAO also dismissed the appeal in that matter.

[6] The applicant's argument implies that the present application is not frivolous. The applicant does claim that five prior approvals of the beneficiary's nonimmigrant status confirmed the applicant's eligibility. The applicant fails to mention that the INS denied the petitioner's third request for an extension and revoked the approval of the last nonimmigrant petition filed by the applicant's employer. Most significantly, the applicant declines to note that prior to filing the current Form I-140 and Form I-485, the applicant's employer filed an initial Form I-140 immigrant visa petition in 1998, which was denied by the director. The AAO affirmed the director's denial on appeal. The issue in the present matter, however, is not whether the beneficiary's application for adjustment of status is frivolous, but whether the visa petition remains "valid" under section 106(c) of AC21.

mentions "inordinate delays in labor certification and INS visa processing" in reference to provisions relating to the extension of an H-1B nonimmigrant alien's period of stay. *See* S. Rep. No. 106-260, at 9, 20 (2000), *available at* 2000 WL 622763. In the 2001 *Report on the Activities of the Committee on the Judiciary*, the House Judiciary Committee summarized the effects of AC21 on immigrant visa petitions:

> [I]f an employer's *immigrant visa petition* for an alien worker has been filed and remains unadjudicated for at least 180 days, the petition shall remain valid with respect to a new job if the alien changes jobs or employers if the new job is in the same or a similar occupational classification as the job for which the petition was filed.

H.R. Rep. No. 106-1048, at 194 (2000), *available at* 2001 WL 67919 (emphasis added). Notably, this report further confuses the question of congressional intent since the report clearly refers to "immigrant visa petitions" and not the "application for adjustment of status" that appears in the final statute. Even if more specific references were available, the legislative history behind AC21 would not provide guidance in the current matter since, as previously noted, an approved employment-based immigrant visa petition was required to file for adjustment of status at the time Congress enacted AC21.

## III. INTERPRETATION OF "VALID"

Upon review, the applicant's assertions are not persuasive. The operative language in section 106(c) is the following sentence: "A petition . . . shall remain valid with respect to a new job if the individual changes jobs or employers . . . ." The term "valid" is not defined by the statute, nor does the Congressional Record provide any guidance as to its meaning.[7]

---

[7] USCIS has not published any regulations governing the application of section 106(c) of AC21. The agency has offered guidance on this provision in the form of policy memoranda and has amended the Adjudicator's Field Manual ("AFM") to account for the law. At the time of adjudication, neither the memoranda nor the AFM had defined the term "valid" or discussed the effect of AC21 on a petition that is denied or remains unadjudicated after 180 days. *See* Memorandum from William R. Yates, Acting Assoc. Dir. for Operations, USCIS, *Continuing Validity of Form I-140 Petition in accordance with Section 106(c) of the American Competitiveness in the Twenty-First Century Act of 2000* (Aug. 4, 2003); Memorandum from Michael A. Pearson, Executive Assoc. Comm'r, Office of Field Operations, INS (now CIS), *Initial Guidance for Processing H-1B Petitions as Affected by the American Competitiveness in the Twenty-First Century Act (Public Law 106-313) and Related Legislation* (June 19, 2001); *see also* AFM § 20.2. USCIS has since issued supplemental guidance on section 106(c) of AC21. *See* Memorandum from

(continued...)

*See* S. Rep. No. 106-260; *see also* H.R. Rep. No. 106-1048. Critical to section 106(c) of AC21, the petition must be "valid" to begin with if it is to "*remain* valid with respect to a new job." Section 204(j) of the Act (emphasis added).

Although the applicant relies on congressional intent and the "familiar canons of statutory construction" to assert that the AAO should construe section 106(c) liberally, the applicant does not discuss the actual language of the statute. Statutory interpretation begins with the language of the statute itself. *Pennsylvania Department of Public Welfare v. Davenport*, 495 U.S. 552 (1990). We are expected to give the words used in the statute their ordinary meaning. *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). Furthermore, we are to construe the language in question in harmony with the thrust of related provisions and with the statute as a whole. *K Mart Corp. v. Cartier Inc.*, 486 U.S. 281, 291 (1988) (holding that construction of language which takes into account the design of the statute as a whole is preferred); *see also COIT Independence Joint Venture v. Federal Sav. and Loan Ins. Corp.*, 489 U.S. 561 (1989); *Matter of W-F-*, 21 I&N Dec. 503 (BIA 1996).

The problematic issues presented by this case are primarily the result of immigration procedures that have arisen since the enactment of section 106(c) of AC21. As previously noted, USCIS implemented the "concurrent filing" process on July 31, 2002, whereby an employer may file an employment-based immigrant visa petition and an application for adjustment of status for the alien beneficiary at the same time. *See* 67 Fed. Reg. at 49,561. USCIS implemented the concurrent filing process as a convenience for aliens and their U.S. employers; USCIS in no way suggested that an unadjudicated I-140 could be the basis for I-485 approval under the portability provisions of section 106(c). Prior to this date, only immediate relatives and family-based preference cases could concurrently file a visa petition and an adjustment application. Accordingly, at the time that Congress enacted AC21, no alien could assert that a denied or unadjudicated immigrant visa petition "shall remain valid" through the passage of 180 days, since the application for adjustment could not be filed until after the petition was approved by USCIS. It is presumed that Congress is aware of INS regulations at the time it passes a law. *See Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184-85 (1988).

---

(...continued)

Donald Neufeld, Acting Assoc. Dir. of Domestic Operations, USCIS, *Supplemental Guidance Relating to Processing Forms I-140 Employment-Based Immigrant Petitions and I-129 H-1B Petitions, and Form I-485 Adjustment Applications Affected by the American Competitiveness in the Twenty-First Century Act (Public Law 106-313), as amended, and the American Competitiveness and Workforce Improvement Act of 1998 (ACWIA), Title IV of Div. C of Public Law 105-277* (May 30, 2008).

Contrary to the ordinary meaning of the word, the applicant's assertion would have the AAO construe the term "valid" to include denied or unadjudicated petitions. *See Webster's New College Dictionary* 1218 (2001) (defining "valid" as "well-grounded," "producing the desired results," or "legally sound and effective"). Since an approved petition was required to file an application for adjustment of status, it is extremely doubtful that Congress intended the term "valid" to include petitions that are denied or remain pending after the close of the 180-day period.[8]

With regard to the overall design of the nation's immigration laws, section 204 of the Act provides the basic statutory framework for the granting of immigrant status. Section 204(a)(1)(F) of the Act provides that "[a]ny employer desiring and intending to employ within the United States an alien *entitled* to classification under section . . . 203 . . . may file a petition with the Attorney General [now Secretary of Homeland Security] for such classification." (Emphasis added.)

Section 204(b) of the Act governs USCIS' authority to approve an immigrant visa petition and grant immigrant status:

> After an investigation of the facts in each case, and after consultation with the Secretary of Labor with respect to petitions to accord a status under section 203(b)(2) or 203(b)(3), the Attorney General [now Secretary of Homeland Security] shall, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is . . . eligible for preference under subsection (a) or (b) of section 203, approve the petition and forward one copy thereof to the Department of State. The Secretary of State shall then authorize the consular officer concerned to grant the preference status.

Accordingly, pursuant to the statutory framework for the granting of immigrant status, any United States employer desiring and intending to employ an alien "entitled" to immigrant classification under the Act "may file" a petition for classification. Section 204(a)(1)(F) of the Act. However, section 204(b) of the Act mandates that USCIS approve that petition only after investigating the facts in each case, determining that the facts stated in the petition are true and that the alien is eligible for the requested classification, and consulting with the Secretary of Labor when required. Section 204(b) of the Act. Congress specifically granted USCIS the sole authority to approve an immigrant visa petition; an alien may not adjust status or be granted

---

[8]   It is also noted that the Act contains at least one provision that does apply to pending petitions; in that instance, Congress specifically used the word "pending." *See* section 101(a)(15)(V) of the Act, 8 U.S.C. § 1101(a)(15)(V) (2000) (establishing a nonimmigrant visa for aliens with family-based petitions that have been pending 3 years or more).

immigrant status by the Department of State until USCIS "approves" the petition.

Therefore, to be considered "valid" in harmony with the thrust of the related provisions and with the statute as a whole, the petition must have been filed for an alien who is "entitled" to the requested classification and that petition must have been "approved" by a USCIS officer pursuant to his or her authority under the Act. *See generally* section 204 of the Act. Contrary to the applicant's assertions, a petition is not made "valid" merely through the act of filing the petition with USCIS or through the passage of 180 days. To interpret this provision in any other manner would subvert the statutory scheme of the U.S. immigration laws.

Considering the statute as a whole, it would severely undermine the immigration laws of the United States to find that a petition is "valid" when that petition was never approved or, even if it was approved, if it was filed on behalf of an alien who was never "entitled" to the requested visa classification. It would be irrational to believe that Congress intended to throw out the entire statutorily mandated scheme regulating immigrant visas whenever that scheme requires more than 180 days to effectuate. It would also be absurd to suppose that Congress enacted a statute that would encourage large numbers of ineligible aliens to file immigrant visa petitions, if the legislation was actually meant to be an impetus for USCIS to reduce its backlogs. Although the applicant's assertions rely heavily on the assumed intent of Congress to ameliorate the effects of USCIS backlogs, the applicant's construction of section 106(c) would create a situation where ineligible aliens would gain a "valid" visa simply by filing frivolous visa petitions and adjustment applications, thereby increasing USCIS backlogs, in the hopes that the application might remain unadjudicated for 180 days.

In the present matter, the petition was filed on behalf of an alien who was not "entitled" to the classification and the petition was ultimately denied. Section 106(c) of AC21 does not repeal or modify section 204(b) or section 245 of the Act, which require USCIS to approve a petition prior to granting immigrant status or adjustment of status. Accordingly, this petition cannot be deemed to have been "valid" for purposes of section 106(c) of AC21.

## IV.  CONCLUSION

Because the applicant's assertions are not persuasive and the denial of the underlying petition still stands, there is no provision to allow the approval of the adjustment application. The burden of proving eligibility for the benefit sought remains entirely with the applicant. Section 291 of the Act, 8 U.S.C. § 1361 (2000). Here, that burden has not been met. The application must be denied.

This decision does not bar the applicant's new prospective employer from filing a new I-140 immigrant visa petition, based on an appropriate visa classification, with a new I-485 application for adjustment of status. It is noted that the applicant has a priority date of April 27, 2001, based on a labor certification that was filed on his behalf by a third potential employer, which makes him eligible for benefits under section 245(i) of the Act.

**ORDER:** The director's decision is affirmed. The application is denied.